## NEW YORK GUARANTY COMPANY v. MEMPHIS WATER COMPANY.

1. An assignee of a chose in action, or any other *cestui que trust*, cannot, merely on the ground that his interest is an equitable one, proceed in a court of equity to recover his demand. *Hayward* v. *Andrews*, 106 U. S. 672, cited upon this point and approved.
2. The courts of the United States especially, in view of the act of Congress declaring that suits in equity shall not be sustained where there is a plain, adequate, and complete remedy at law, should enforce this rule.
3. Certain parties holding bonds secured by a mortgage filed their bill to recover moneys alleged to be due on a contract which the city of Memphis made with the mortgagor, and which was assigned in the mortgage as part of the security for the bonds. *Held*; that the bill will not lie, the demand against the city being cognizable at law in the name of the mortgagor, and no special circumstances shown for a resort to equity.

APPEAL from the Circuit Court of the United States for the Western District of Tennessee.

The case is stated in the opinion of the court.

*Mr. William M. Randolph* for the appellants.

*Mr. Joseph B. Heiskell* for the appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case was commenced by a bill in equity filed by the New York Guaranty and Indemnity Company and others, holders of bonds of the Memphis Water Company, against said Water Company, the city of Memphis, the trustees of a mortgage given to secure said bonds, and certain others of the bondholders and persons interested. The principal object of the bill was to have declared valid a certain contract made between the city and the Water Company, and to compel the city to comply with its terms, in order that the moneys alleged to be due thereon from the city might be applied to the payment of the bonds held by the complainants and others, the said contract being included in the mortgage. There was also a prayer for a sale of all the property and privileges of the Water Company under the mortgage, and an alternative prayer that the said contract might be cancelled if the court should hold it to be void, and that then the city might be compelled to pay up a subscription it had made to the stock of the Water Company, or else that the stock might be cancelled. The circumstances of the case on which the bill was founded may be briefly stated as follows : —

The charter of the city of Memphis, amongst other things, conferred upon its corporate authorities the power of supplying the city with water for all purposes. But on the 28th of February, 1870, an act was passed chartering the Memphis Water Company, and giving to it the exclusive privilege of laying down water-pipes and extending aqueducts and conductors through all or any of the streets, lanes, and alleys of the city, and of supplying to the inhabitants water by public works. Under this charter the company commenced operations for laying pipes and erecting works without the acquiescence of the city authorities. The city undertook to carry out a counter scheme, which had been under consideration for several years. A litigation ensued, which resulted in June, 1871, in a judgment of the Supreme Court of Tennessee, confirming the Water Company's exclusive right, and enjoining the city from interfering therewith, the court holding in substance that the exclusive right given to the Water Company suspended that of the city for the period named in the former's charter. There-

upon, on the 18th of January, 1872, the city and the Water Company entered into a contract whereby, amongst other things, the Water Company agreed to erect water-works in the city, including a certain number of street hydrants, of a peculiar construction, which the city agreed to hire for the purpose of extinguishing fires, and to pay therefor a certain annual rent; and it was mutually agreed that the city should receive one-half of the company's capital stock, amounting to $100,000.

Immediately after this contract was executed the Water Company took measures to raise money by an issue of bonds to the amount of $600,000. For this purpose they executed a deed of trust in the nature of a mortgage to F. S. Davis, T. R. Farnsworth of Memphis, and J. L. Worth of New York, whereby they conveyed all their franchises, lands, wells, pumps, machinery, pipes, and other property then held and thereafter to be acquired, and all the income which they might thereafter, "receive, acquire, or become entitled to, including all sums of money which the party of the first part may become entitled to receive from the city of Memphis under and by virtue of a contract made and entered into between the said city of Memphis and the said party of the first part hereto on the eighteenth day of January, A. D. 1872." This deed was declared to be given for the purpose of securing the payment of six hundred bonds of $1,000 each, payable to bearer, with interest at seven per cent per annum semi-annually. In case default should be made in payment of principal or interest, power was given to the trustees to take possession of the property and books of the company, and to collect all moneys due to it, including all sums due or coming due from the city of Memphis under the said contract, and to apply the same to the payment of unpaid interest on the bonds; and, if two successive instalments of interest should be unpaid, the principal to become due, and at the request of a majority in interest of the bondholders, the trustees should take possession, give notice, and sell the entire property for cash, and apply the same to the payment of principal and interest on the bonds.

The bonds provided for by this mortgage were duly issued and disposed of, and the complainants represent themselves as

holding nearly all of them; those supposed to hold the remainder being made defendants.

It is alleged, and not denied, that on or prior to the 1st of April, 1873, the water-works were completed and in operation, and the hydrants stipulated for in the contract of January, 1872, were used by the city. But the city refusing to pay the rent therefor, a suit was brought by the Water Company against the city to recover the first instalment of rent due. After the pleadings were filed, the writ and declaration were amended by consent so as to be in the name of the Water Company, to the use of Davis, Farnsworth, and Worth, trustees of the mortgage. The cause was tried in April, 1874, and a verdict was given and judgment rendered for the plaintiffs. The Supreme Court of Tennessee, on writ of error, reversed this judgment in December, 1876, and awarded a new trial, the court holding that the contract between the city and the Water Company was *ultra vires* of the city and absolutely void.

In the mean time, in May, 1875, whilst the writ of error was pending, at the request of the requisite number of bondholders, the trustees of the mortgage took possession of the property of the Water Company, and proceeded to advertise the same for sale. Thereupon one T. W. Yardley, a holder of some of the bonds, filed a bill in equity in the Chancery Court of Shelby County, Tennessee, alleging that the New York Guaranty and Indemnity Company had obtained the bonds held by it for an usurious and corrupt consideration, which made it inequitable for that company to hold the said bonds, or at least for the full amount thereof; and that said company was urging the trustees to make said sale, which would at that time be at a sacrifice of the property; and he prayed for an injunction to prevent the sale, and for an investigation of the true amount due, if anything, to said New York Guaranty and Indemnity Company. All — the bondholders as well as the Water Company itself — were made parties to the suit. A temporary injunction was granted. On the 25th of May, 1875, a decree was made by consent of all parties, that the property should be exposed for sale by the trustees on sixty days' notice, whenever the court in its discretion should so order, on the demand of the requisite number of bondholders, and that the mutual rights of the par-

ties to a distribution of the proceeds should be ascertained by the further litigation in the cause; the trustees in the mean time to keep possession of the property and account for all receipts and expenditures. An amendment to the bill was afterwards filed, which prayed an account to be taken of the amount justly due to all parties, and for a foreclosure and sale of the mortgaged premises. Answers and cross-bills were filed, nearly all the bondholders appearing to assert their respective interests. In January, 1876, the cause was removed to the Circuit Court of the United States, and further proceedings took place in that court. On the 15th of May, 1876, the trustees, at their own request, and with the assent of all parties, were by decree discharged from the custody of the water-works, and the president and secretary of the Water Company were placed in charge; but it was stated in the decree that the property was not thereby restored to the company itself, but to be operated in the interest of the bondholders, and at all times subject to the supervision and control of the court. In March, 1877, a few days after the filing of the bill in the present case, a decree was made dismissing Yardley's bill and the several cross-bills. An appeal was taken to this court, but was dismissed for want of prosecution. On the 2d of June, 1879 (after the final decree was made in the present case), the Circuit Court, on the application of the New York Guaranty and Indemnity Company and others, holding a majority of the bonds, made a decree in the Yardley suit, in pursuance of the consent decrees of May 28, 1875, and May 15, 1876, ordering a sale, by a commissioner appointed for that purpose, of all the franchises, rights, privileges, and property conveyed by the deed of mortgage, and authorizing the commissioner to receive the bonds and coupons secured by the mortgage, as cash in payment of the property, and foreclosing the equity of redemption. In answer to an application of the appellants here, it is now shown by the appellees that the said decree for sale was carried into effect in 1880, and the purchase-money paid, and that in June of that year, pending this appeal, the Circuit Court made a decree confirming said sale.

In the present case, the principal defence set up by the city of Memphis, by answer and demurrer, was the alleged ille-

gality of the contract, as adjudged by the Supreme Court of Tennessee. It was also insisted that there was a complete and adequate remedy at law ; that if there was any cause of action or complaint, it was vested in the Water Company and the trustees of the mortgage, all of whom reside in Tennessee ; and that the complainants, if they have any claim, acquired it through the assignment of the Water Company, which, itself, could not maintain a suit in the United States court. The Circuit Court concurred in the view taken by the Supreme Court of the State, and held that the contract on the part of the city was *ultra vires* and void, and dismissed the bill by a final decree rendered May 27, 1879. From this decree the present appeal was taken.

The main object of the bill was to enforce the performance of the contract made between the city of Memphis and the Water Company ; to have it declared binding, and to compel the city to pay the rents due under it, in order that they might be applied in satisfaction of the bonds held by the complainants and others. There was added, it is true, a prayer for the foreclosure and sale of the mortgaged property, and the application of the proceeds to the payment of the debts received. But this latter relief was already provided for by the consent decrees entered in the Yardley suit, which, as we are now informed, have been carried into effect at the instance of the appellants themselves pending this appeal. The important question to be considered is, whether the principal relief prayed for can be granted in this suit.

The contract sought to be enforced was not made with the complainants ; nor has it ever been assigned to them. It was made with the Water Company, and its interest therein was assigned to the trustees of the mortgage, as part of the security for the payment of the bonds held by the complainants. Whatever interest the complainants have therein they derive as beneficiaries under the mortgage through the assignment which it contained. They stand in no better plight for the maintenance of the suit than the trustees would if they had brought it. There seems to be no reason, indeed, why the suit was not brought by the trustees. No allegation is made that they were even unwilling to bring it. The legal interest of the mortgage

was in them, and they were the proper representatives of all the bondholders, and the most proper persons to protect the trust in their hands.   Indeed they did bring a suit to enforce the contract.   The action at law brought in the name of the Water Company against the city for the recovery of the first instalment of rent was prosecuted for the use of the trustees; and this was really the proper mode of proceeding.   Had the judgment in that case been a final one, the questions raised in this cause would have been *res judicata;* but a new trial being ordered it failed to have this effect.   Thereupon, shortly after the decision of the Supreme Court was rendered, the principal bondholders, without, so far as appears, making any effort to have that suit further prosecuted, brought this suit in the Federal Court in their own names as complainants, and seek in this indirect way to accomplish the same purpose which was attempted to be obtained by the direct proceeding in the State court.   It is a manifest attempt to evade the decision of the case by that court, which had full and adequate jurisdiction of the subject.

It was objected *in limine,* by the demurrer to the bill, that as the complainants claim under the assignment of the contract made to the trustees, the Circuit Court had no jurisdiction, because the Water Company, with which the contract was made, and which made the assignment, is a citizen of Tennessee.   This objection is insisted on here, and would seem to be conclusive, if the citizenship of the parties were the only ground of jurisdiction of the Circuit Court.   The act of March 3, 1875, c. 137, declares that no Circuit or District Court shall have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made. This suit is founded on the contract between the city and the Water Company; the whole claim of the bondholders to any benefit therefrom depends upon the assignment thereof contained in the mortgage deed; and although the trustees of the mortgage are the real assignees, the bondholders, as *cestuis que trust,* claim under them and stand on no higher plane, as regards the right to sue, than the trustees themselves.   The complainants, however, insist that this suit is cognizable by the

Circuit Court by reason of that court's having judicial posses-
sion and control of the mortgaged property in the Yardley suit.
The bill and cross-bills in that suit, it has been seen, were dis-
missed; but the parties regarded the consent decrees entered
therein as giving the court authority to keep the property
under its control, and to cause it to be sold.   Therefore, so far
as relates to the water-works themselves, and all the property
comprised in the mortgage which is susceptible of actual pos-
session, the position of the appellants may be correct.   But
the claim against the city does not lie in possession, but in con-
tract alone.   The contract itself may be subject to sale as
part of the mortgage assets; but the proceeds of the contract,
the money alleged to be due from the city to the Water Com-
pany under it, has never been reduced to possession, and the
city of Memphis denies its liability to pay it.   In order to
reduce to possession the money claimed to be due, and subject
it to the control of the court, the ordinary mode of enforcing
the contract must be resorted to.   It may be that the Circuit
Court had the power to direct such a proceeding to be had as
ancillary to its administration of the mortgage fund; but it
must be a proper proceeding, adapted to the nature of the
demand.   If a promissory note were included in the mortgage
fund, and the parties liable upon it should refuse to pay it, the
Circuit Court might probably order the trustees of the mort-
gage to bring an action on the note; but a bill in equity would
hardly be considered a proper proceeding for enforcing its col-
lection.   The view we have taken with regard to the propriety
of the proceeding in this case, for enforcing the contract
against the city, renders it unnecessary to determine the ques-
tion raised on the assignment of it by a citizen of Tennessee.
Whether the contract is, or is not, a valid one, and if valid,
what are the obligations of the city under it, and the damages
for the breach thereof, are pure questions of law, which the
city cannot, under ordinary circumstances, be compelled to liti-
gate with any other party than the Water Company or its
legal assigns.   If the parties having the legal interest refuse
to sue, those having the beneficial interest will be authorized
to use their names on giving them proper indemnity against
costs.   The city has a right to be confronted with those who

have the legal interest in the contract, unless they absolutely refuse the use of their names, or special circumstances exist which would prevent or greatly embarrass the prosecution of the suit.   It does not lose its right to a trial at law by any pledges or assignments which the Water Company may make of its interest in the contract.   Such pledges or assignments may create equitable rights in regard to that interest, as between the Water Company and the assignees; but the contract, so far as the city is concerned, remains a matter of legal cognizance.   If a merchant should pledge his bills receivable as security for a loan, any equitable rights which arise between him and his pledgee may be adjudged in equity; but the makers and acceptors of the bills must be sued thereon at law. And so here: whilst the equities between the Water Company as mortgagor and the mortgagees, or those claiming under them (such as the right of redemption, &c.), may be determined by a court of equity, the legal demand against the city on the contract is cognizable at law, and should be prosecuted in the ordinary courts of law, as was done in the action brought in the name of the Water Company against the city. Every question arising on the contract in this suit is determinable in an action at law, and was determined in the action referred to.

Recurring for a moment to the leading facts: how does the case really stand?   The trustees of the mortgage, on default of the Water Company in payment of interest, took possession of its works, and carried them on.   In performing this duty they found, or supposed they had found, that certain rents had accrued and were accruing from the city for the use of the hydrants, under the contract in question, which rents the city refused to pay.   To establish the contract and recover these rents, their remedy was clear and adequate by an action at law in the name of the Water Company.   They brought such an action, and failed by the adverse decision of the Supreme Court of Tennessee.   Then the bondholders, dissatisfied with this result, brought this suit in equity in the Federal court for the purpose of raising the same questions anew.   It is difficult to see how they acquired any right to transfer the controversy from a court of law to a court of equity.   The fact that

they have only a beneficial interest is not of itself sufficient. Whether the legal interest in the contract remained in the Water Company or became vested in the trustees, an action at law could have been brought in the name of the party having it. There is no allegation in the bill that either of these parties were applied to, or that they refused to allow such an action to be brought in their names.

We have lately decided, after full consideration of the authorities, that an assignee of a chose in action on which a complete and adequate remedy exists at law cannot, merely because his interest is an equitable one, bring a suit in equity for the recovery of the demand. *Hayward* v. *Andrews*, 106 U. S. 672. He must bring an action at law in the name of the assignor to his own use. This is true of all legal demands standing in the name of a trustee, and held for the benefit of *cestuis que trust*. Besides the authorities cited in that case, reference may be made to Mitford on Pleading, 123, 125; Willis's Equity Plead. 435, note (*g*); *Adair* v. *Winchester*, 7 Gill & Johns. (Md.) 114; *Moseley* v. *Boush*, 4 Rand. (Va.) 392; *Doggett* v. *Hart*, 5 Fla. 215; *Smiley* v. *Bell*, Mart. & Y. (Tenn.) 378; and the English and American notes to *Ryall* v. *Rowles*, 1 Ves. Sen. 348, and to 2 White & Tudor's Leading Cases in Equity, pp. 1567, 1670 (ed. 1877).

In view of the early enactment by Congress in the sixteenth section of the Judiciary Act (Rev. Stat., sect. 723), declaring " that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law," the rule laid down in *Hayward* v. *Andrews* is entitled to special consideration from the courts of the United States. This enactment certainly means something; and if only declaratory of what was always the law, it must, at least, have been intended to emphasize the rule, and to impress it upon the attention of the courts.

We think that the present case clearly falls within the rule. The bill alleges no special circumstances which can properly take it out of its operation. The fact that there are many beneficiaries entitled to a distribution of the fund is not sufficient for that purpose. All the property covered by the mort-

gage deed constitutes one fund, and is to be brought together and administered as such by first discharging the expenses of the trust, and distributing the residue amongst the bondholders *pro rata.* There is no such division and separation of interests into distinct parcels as existed in the case of *Field* v. *Mayor, &c. of New York,* reported in 6 N. Y. 179. The whole beneficiary interest is a unit, and is represented by the trustees of the mortgage; and the case presents no difficulty or embarrassment in the way of an action at law.

We think, therefore, that the bill could have been properly dismissed on this ground alone; and this renders it unnecessary for us to consider the other questions in the case.

<div style="text-align:right">

*Decree affirmed.*