WALKER et al. v. BROWN et al.

(Circuit Court, S. D. Iowa, Central Division. September 9, 1893.)

1. EQUITY JURISDICTION—REMEDY AT LAW—CONTRACT LIEN.
    An agreement made with a prospective creditor of a mercantile firm by one who has loaned bonds to it that such bonds, "or the value thereof," shall not be returned to him until any money owing to such creditor shall be paid, and that the bonds, "or the value thereof," shall remain at the risk of the firm's business so far as any claim of such creditor is concerned, does not create a lien on the bonds themselves, for the owner has a right to take them back at any time by paying their value into the firm; and hence the taking of them back without leaving their value is a mere breach of contract, for which the proper remedy is damages at law, and a bill in equity will not lie to subject the bonds or their proceeds to the creditor's debt.

2. BILL OF DISCOVERY—WHEN SUSTAINABLE.
    A bill brought against an administrator to enforce an alleged lien upon certain bonds or their proceeds belonging to the estate, there being in fact no lien, cannot be sustained as a bill for discovery, merely, because of a prayer for disclosure as to the whereabouts of said bonds, and whether they or their proceeds now constitute part of the estate, and for an accounting touching the assets of the estate and the administrator's dealing therewith, especially when the answer fully shows the whereabouts of the bonds.

3. SAME—TRUSTS—ADMINISTRATOR AND CREDITOR OF ESTATE.
    A creditor of an estate is not such a cestui que trust of the administrator as will entitle him to maintain a bill in equity in the federal courts for the purpose of securing accounting by the administrator and payment, merely on the ground of the trust relation, unaided by averments of fraud, maladministration, or nonadministration.

In Equity.    Bill dismissed for want of jurisdiction.

Willits, Robbins & Case, for complainants.

Kauffman & Guernsey, for respondents.

WOOLSON, District Judge.    This is an action in equity, brought by James H. Walker, Columbus R. Cummings, and William B. Howard, residents and citizens of the state of Illinois, and doing business under the name and style of James H. Walker & Co., against Anna L. Brown, in her own right and as administratrix, and Willis S. Brown and Edward L. Marsh, as administrators, of the estate of Talmadge E. Brown, deceased, all of said respondents being residents and citizens of the state of Iowa.

The facts, as contended for by complainants, are substantially as follows:    That in the summer of 1889 a corporation known as the Lloyd Mercantile Company, doing business at Ellensburg, Wash., was indebted to said Walker & Co. for merchandise sold to said company.    That about August 1, 1889, a copartnership under the name and style of Lloyd & Co. succeeded to the assets and assumed the liabilities of said mercantile company.    That said Lloyd & Co. applied to said Walker & Co. for sales of merchandise upon credit.    That, as said Walker & Co. understood, one Talmadge E. Brown had been a stockholder in said mercantile company, and his relation was now changed, as to said new company, to that of a creditor of said Lloyd & Co.    That Walker & Co. declined to make said sales upon credit to said Lloyd & Co.

That at that time said Brown had $15,000 in bonds, (of the city of Memphis, Tenn.,) which he had loaned to J. C. Lloyd, (one of the members of Lloyd & Co.,) to be and which were used as security for a loan of that amount at the Union National Bank of Chicago, Ill. That at the instance of said Walker & Co., and to enable said Lloyd & Co. to obtain credit with Walker & Co., said Brown wrote and delivered to said Walker & Co. a letter and agreement, as follows:

"Chicago, Sept. 21, 1889.

"Messrs. Jas. H. Walker & Co., Chicago, Ill.—Gentlemen: I beg to advise you that the loan of fifteen thousand dollars, Memphis bonds, made by me to Mr. J. C. Lloyd for the use of Messrs. Lloyd & Co., Ellensburg, Wash. Ter., is with the understanding that any indebtedness they may be owing to you at any time shall be paid before the return to me of these bonds, or the value thereof, and that these bonds, or the value thereof, are at the risk of the business of Lloyd & Co., so far as any claim you may have against said Lloyd & Co. is concerned.

"Yours, truly,                                                   T. E. Brown."

—And thereupon said Walker & Co. sold and delivered to said Lloyd & Co., on credit, and between August 20, 1889, and December 11, 1889, a large quantity of merchandise, in value, and for which said Lloyd & Co. agreed to pay, over $12,000. That thereafter said Brown, "for the purpose of avoiding and escaping from the effects of his said agreement" with said Walker & Co., "and without any equivalent or consideration moving from said Brown to said Lloyd & Co.," took said bonds into his (Brown's) possession, and retained same till his death, and the same came, as a part of his estate, into the hands of respondents as his administratrix and administrators. That said complainants did not know of said bonds having been so taken up by said Brown until after all of said indebtedness had been contracted by Lloyd & Co. That Lloyd & Co. have become wholly insolvent, and are unable to pay said debt; and therefore complainants pray discovery as to whereabouts of said bonds, and by whom held and claimed, and further pray—

(1) A specific lien on said bonds, or any part thereof, if owned by the estate of said Brown, and that same be sold, and proceeds thereof to the amount of the unpaid indebtedness of said Lloyd & Co., which is averred to be over $13,000, be paid complainants.

(2) If said bonds have been sold or exchanged for other properties, which are now traceable to the hands of said administrators, that a lien in like manner be adjudged thereon in favor of complainants, and same sold, proceeds applied, etc.

(3) If the bonds or proceeds do not now form a part of said estate in said administrators' hands, complainants may be adjudged creditors of said estate, and their claim be herein established to amount found due.

(4) That "said administrators be ordered to render and state under the direction of this court an account of all their doings as such administrators touching the administration and management of said estate, as well as of all creditors or other claimants upon said estate."

The proof is not entirely, although mostly, in harmony with these contended-for facts. It is proven that Lloyd & Co.'s account with complainants shows over $13,000 due for merchandise by Lloyd & Co. purchased; that complainants refused to sell Lloyd & Co. said merchandise on credit until said Brown wrote and delivered to them said letter or agreement, (above set out in full,) and that said sales were made on the strength of said letter; that Brown never was a stockholder in the Lloyd Mercantile Company; that said Memphis bonds were never the property of said mercantile company, but were the property of said Brown, and the same, to wit, $10,000 about October 26, 1889, and $5,000 about December 11, 1889, were taken up and returned to said Brown, and without the knowledge of said complainants, but that at the time of their taking up an equal amount of money was paid into said Union National Bank, and the debt for whose payment they stood thereby paid off; that about December 25, 1889, Lloyd & Co. failed, and their property has all been disposed of under judgments against them; that before said Brown's death he gave to his wife, respondent Anna L. Brown, said Memphis bonds, and same are now her property, in her own right. The evidence has also gone into other lines, particularly the methods to secure and obtain payment of complainants' debt after failure of Lloyd & Co., and what is claimed worked a payment of said debt.

The first point of defense we meet, which is made in the answer and vigorously urged on the trial, is that complainants, under the evidence, have no standing in equity in this case, and that whatever remedy complainants have lies at law; that they have "a plain, adequate, and complete remedy at law." There is little opportunity for dispute as to the doctrine prevailing in the federal courts on this point. Section 723 of the Revised Statutes is in these words: "Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law." The court is bound to enforce this demand in any case falling under it; and if counsel did not raise the point, in a case where the same applied, it is the duty of the court, sua sponte, to take notice of the point, and act accordingly. Parker v. Woolen Co., 2 Black, 545; Lewis v. Cocks, 23 Wall. 466; Killian v. Ebbinghaus, 110 U. S. 574, 4 Sup. Ct. Rep. 232. Insurance Co. v. Bailey, 13 Wall. 621, applies with noticeable vigor the doctrine of this section. Bailey took out two policies in the insurance company on his own life in the name of his wife. After his death, due proofs thereof, in accordance with the terms of the policy, were presented to the company, who refused to pay the amount of the insurance therein expressed, on the ground that the policies were obtained by fraudulent representations, etc., of material facts; and thereupon the company instituted this action in equity to enjoin the wife, the beneficiary, from assigning or disposing of the policies, and prayed for decree adjudging the policies void, and that she deliver the same up to be canceled, etc. The court below dismissed the bill. After quoting the sixteenth section of the judiciary act,—which

is now section 723 of the Revised Statutes,—and citing a number of cases in which that section had come under consideration in the supreme court, the court thereupon announce as their decision that:

"Wherever a court of law in such a case [enforcement of a legal right] is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy without the aid of a court of equity, the plaintiff must in general proceed at law, because the defendant, under such circumstances, has a right to a trial by jury;" citing, among other cases, Insurance Co. v. Delevan, 8 Paige, 422; Alexander v. Muirhead, 2 Desaus, Eq. 162; Insurance Co. v. Stanchfield, 5 Amer. Law Rev. 564.

After a somewhat minute consideration of the classes of cases wherein equity is given jurisdiction, the court, returning to the facts before them, find that—

"By the death of the cestui que vie the obligation to pay, as expressed in the policies, became fixed and absolute, subject only to the condition to give notice and furnish proof. This condition complied with, the obligation to pay certainly became fixed by the terms of the policies, and the sums insured became a purely legal demand, and, if so, it is difficult to see what remedy, more perfect and complete, the appellants can have than is afforded them by their right to make defense at law, which secures them a trial by jury. Where a party, if this theory of the controversy is correct, has a good defense at law to a 'purely legal demand,' he should be left to that means of defense, as he has no occasion to resort to a court of equity for relief, unless he is prepared to allege and prove some special circumstances to show that he may suffer irreparable injury if he is denied preventive remedies."

To the same general effect, and largely on the same reasoning, is the case of Insurance Co. v. Stanchfield, 1 Dill. 424. In that case a fire insurance company, after loss of buildings therein described, brought suit to cancel the policy, on account of fraudulent representations, etc.

"'Chancery,' says Lord Bacon, 'is ordained to supply the law, not to subvert the law;' in other words, the parties must litigate in the law courts, unless there are good and legal reasons for invoking the aid of equity. In the case before us no reason is set forth in the bill showing that the insurance company needs the aid of a court of equity to relieve itself of liability on the policy. * * * If the facts averred in the bill are true, they constitute a complete defense to such an action, and nothing is set forth showing that any obstacles stand in the way of making this defense at law. * * * If no hardship, no injustice, will result, and no reason appears for not leaving these parties to their rights and remedies at law, equity will leave them there."

Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. Rep. 249, illustrates with great distinctness how the federal courts apply section 723. Defendant contracted with plaintiffs to deliver at a date named a lot of cattle at a given price. Before the arrival of the named date, by representing one Mosty as good, solvent, able to fill the contract, etc., defendant succeeded in inducing plaintiffs to take, in lieu of the contract he had signed, an assignment without recourse on him of a contract he (defendant) had with Mosty to deliver cattle at the date and place named in the original contract. Thereupon plaintiff, relying on defendant's representations, surrendered to defendant the original contract, and accepted from defendant his assignment of the Mosty contract. As a fact, as defendant at the time

well knew, Mosty was then insolvent, and unable to perform the contract. Plaintiffs now bring their bill in equity, to cancel the assignment of the Mosty contract, to decree the original contract in force, and for recovery of $15,000 paid to defendant by plaintiff on the contract, and for recovery of $10,000 damages, etc. After quoting and briefly commenting on what is now section 723, Mr. Justice Gray, speaking for the court, says:

"A suit in equity to enforce a legal right can be brought only when the court can give more complete and effectual relief, in kind or degree, on the equity side than on the common-law side; as, for instance, by compelling a specific performance, or the removal of a cloud on the title to real estate; or preventing an injury for which damages are not recoverable at law, as in Watson v. Sutherland, 5 Wall. 74; or where an agreement procured by fraud is of a continuing nature, and its rescission will prevent a multiplicity of suits, as in Boyce v. Grundy, 3 Pet. 210; Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. Rep. 586; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. Rep. 820."

More extended quotations and further citations would seem unnecessary, but the same doctrine will be found applied in Hipp v. Babin, 19 How. 271; Grand Chute v. Winegar, 15 Wall. 376; Lewis v. Cocks, 23 Wall. 466; Root v. Railway Co., 105 U. S. 189; Killian v. Ebbinghaus, 110 U. S. 568, 4 Sup. Ct. Rep. 232; New York Guaranty & Indemnity Co. v. Memphis Water Co., 107 U. S. 205, 2 Sup. Ct. Rep. 279.

Counsel for complainants, while not combating the general doctrine announced in the cases cited, insist they do not apply in this case, because of the discovery sought herein. The basis of this discovery is thus stated in the bill:

"Your orators further show that the true condition and character of said estate, and whether said Memphis bonds, or the proceeds thereof, either in money or other property, now form a part of said estate, cannot be ascertained without a discovery from said defendants, as hereinafter indicated, and unless an accounting shall be had under the direction of this court by said administrators, touching the assets and property of said Talmadge E. Brown, which have come into their hands as such administrators, and their dealings therewith."

The answer filed herein to the bill will dispose of this matter if any doubt appear on the reading of the bill. The discovery, and only discovery, as to said bonds, prayed, is as to whether the bonds are in the hands of said administrators as a part of the estate, and, if not, as to where they are, and what disposition has been made of them. There is no charge of fraud on part of decedent Brown, except as to the return from Union National Bank of the Memphis bonds to him, and the fact of the return is admitted in the answer. As to that no discovery is necessary. Besides, the death of said Brown precludes further discovery as to that point.

It cannot be seriously claimed that the prayer for an accounting by respondents of all their acts as administrators is in the nature of a discovery prayed. The interrogatories attached to the bill are as to the whereabouts and condition of said Memphis bonds. The answer shows they were given by said Brown to his wife, who held them at the time of his death, and still owns them. In fact, if equity jurisdiction be made to depend on discovery herein, that juris-

diction cannot be sustained. The progress of courts under the later legislation, which has made parties in civil actions witnesses competent in their own behalf and compulsory on behalf of opposing parties, has greatly narrowed the field wherein the courts are disposed to sustain discovery as a legitimate basis for equity jurisdiction. Judge Dillon, in Insurance Co. v. Stanchfield, supra, speaking of this point, says:

"Bills for discovery had their origin at a time when at law a party was not entitled to and could not obtain the evidence of his adversary. [And he proceeds to cite the state statutes and federal statutes which make parties competent witnesses in their own behalf or at the command of the opposite party.] The effect of this legislation is to remove the grounds or reasons which originally existed for bills of discovery, and it may admit of doubt whether a bill merely to obtain discovery in aid of another action or defense ought longer to be sustained; but this is a point not now necessary to be determined. If the present bill be treated as one for discovery and relief, and as one where the necessity of obtaining a discovery is the ground of equity jurisdiction, the discovery sought has failed, for the answer denies all the essential averments of the bill charging fraud, and, where this is the result, the bill must be dismissed."

The supreme court of the United States, in Brown v. Swann, 10 Pet. 497, had occasion to consider the same point. That case came to the supreme court on appeal from the District of Columbia, and brought under consideration a statute of the state of Virginia. In speaking of this statute and its effect, the court say:

"When the legislature of the state of Virginia passed the statute it fixed the extent of the jurisdiction of a court of equity to compel a discovery under oath from an interested party in a suit either at law or equity, and the rules which equity had prescribed to itself to enforce its jurisdiction in this regard. It knew the distinction between a bill for such discovery and other bills in chancery, which are also bills for discovery. One of the former is a bill for the discovery of facts alleged to exist only on the knowledge of a person a party to a private transaction with the person seeking the disclosure; in other words, it is a bill to discover facts which cannot be proved according to the existing forms of procedure at law. The jurisdiction of a court of equity in this regard rests upon the disability of courts of common law to obtain or to compel such testimony to be given. It has no other foundation; and whenever a discovery of this kind is sought in equity, if it shall appear that the same facts can be obtained by the process of the courts of common law, it is an abuse of the powers of chancery to interfere. The courts of common law having full power to compel the attendance of witnesses, it follows that the aid of equity can alone be wanted for a discovery in those cases where there is no witness, to prove what is sought from the conscience of an interested party. Courts of chancery have, then, established rules for the exercise of this jurisdiction, to keep it within its proper limits, and to prevent it from encroaching upon the jurisdiction of the courts of common law. The rule to be applied to a bill seeking for discovery from an interested party is that the complainant shall charge in his bill that the facts are known to the defendant, and ought to be disclosed by him, and that the complainant is unable to prove them by other testimony; and when the facts are desired to assist a court of law in the progress of a case, it should be affirmatively stated in the bill that they are wanted for such purpose. * * * Unless such averments are required, it is obvious that the boundaries between the chancery and common-law courts would be broken down, and that chancellors would find themselves, under bills for discovery from an interested party, engaged in the settlement of controversies by evidence aliunde, which the common-law courts could have procured, under process of subpoena, in delaying proceedings at law, by pretenses that a discovery is wanted for the sake of justice, and in en-

*joining judgments,* upon indefinite allegations of the plaintiff having a knowledge of facts which gave to a defendant an equity to be released, though the defendant might have availed himself of the evidence of third persons to establish the same facts, in the progress of the cause, or of the powers of chancery to procure them, by a discovery to assist the court in deciding it, which last case is the case under consideration. * * * Surely it is not unreasonable that a complainant's bill, seeking discovery, for the want of all other testimony, should not be retained after the answer has denied the matter sought."

In 119 U. S. 355, 7 Sup. Ct. Rep. 249, (Buzard v. Houston, supra,) the supreme court say of the case then before them:

"It is enough to say that the case clearly falls within the statement of Chief Justice Marshall: 'But this rule cannot be abused by being employed as a mere pretext for bringing causes, proper for a court of law, into a court of equity. If the answer of defendant discloses nothing, and the plaintiff supports himself by evidence in his own possession, unaided by the confessions of defendant, the established rules limiting jurisdiction of courts require that he should be dismissed from the court of chancery, and permitted to assert his rights in a court of law.'"

The letter or agreement of Brown of September 21, 1889, is above copied. Complainants' bill avers that thereby they "acquired an equitable lien in their favor upon said bonds, or the proceeds thereof, as a security for the payment of said indebtedness of Lloyd & Co. to your orators; and that, if said bonds have come in specie into the hands of the administrators, your orators are entitled by the decree of this court to have adjudged a lien in their favor for said indebtedness, and to have said bonds sold, and proceeds thereof applied to payment of said indebtedness, and, if said bonds have been sold or otherwise disposed of, and proceeds invested in other property, your orators are entitled to have said lien adjudged on said other property or proceeds; and that, if said bonds or other property or proceeds cannot be so traced, then said Brown in his lifetime was, and said administrators are now, liable to your orators for the value of said bonds," etc.

Let it be here noticed that no equitable lien is claimed on said bonds because of any attempt by Brown, in this letter or agreement, to give a lien thereon, which, by reason of mistake or failure, was not perfected into a lien. No basis for equity jurisdiction is thus claimed. This letter was prepared by Mr. Mason, who was the "credit man" of complainants, and Mr. Brown signed it as it was thus prepared. Whatever rights complainants may have thereon are based on the phraseology of the letter. So that this inquiry as to this letter is narrowed down to considering whether by this letter complainants acquired a lien on the bonds therein described. Upon the trial no such lien was claimed by counsel for complainants in the event that Mr. Brown deposited or paid in the value of the bonds in lieu of the bonds themselves. That is, it was conceded that by the very terms of the letter, Mr. Brown, if he so desired, could deposit with the Union National Bank the value of the bonds, and take up the bonds, or he could pay into the partnership of Lloyd & Co. $15,000, (the value of the bonds,) and then take up the bonds. There was therefore no contract lien on the bonds. Wherein, then, is this action, in this matter, other than an action for damages, because of Mr.

Brown's failure to fulfill his agreement? He had agreed with complainants that he would leave the bonds, or their value, in the company as long as the company was indebted to complainants, and as to any such indebtedness these bonds, or their value, should be "at the risk of the business" of Lloyd & Co. It is now claimed that he did not leave said bonds, or their value, as agreed in said letter, and thereby the bonds, or their value, were not left, as to complainants, "at the risk of the business" of said company. In other words, that Brown violated his agreement, and that, because of Brown's failure to keep or fulfill his said agreement, complainants, who in their sales to Lloyd & Co. relied on such agreement, have been damaged. What is such a statement but that of an action at law? And wherein does the bill aver other matters, giving to this court the right to declare that by reason thereof respondents must submit to the court their defense, and shall be refused their demand that a jury shall pass thereon?

In Buzard v. Houston, supra, the supreme court of the United States declare with reference to a case wherein was the averment of fraud as a ground for action and prayer for cancellation of an assignment, thus presenting a stronger case for equity than does the case at bar, (page 350, 119 U. S., and page 252, 7 Sup. Ct. Rep.:)

"In Newman v. May, 13 Price, 749, Chief Baron Alexander said: 'It is not in every case of fraud that relief is to be administered by a court of equity. In the case, for instance, of a fraudulent warranty on the sale of a horse, or any fraud upon the sale of a chattel, no one, I apprehend, ever thought of filing a bill in equity.' The present bill states a case for which an action of deceit could be maintained at law, and would afford full, adequate, and complete remedy. * * * If the exchange of the contracts was procured by fraud alleged, it would be no more binding upon the plaintiffs at law than in equity; and in an action for deceit the plaintiffs might treat the assignment as void, and, upon delivering up that contract to the defendant, recover full damages for the nonperformance of the original agreement. * * * A judgment for pecuniary damages would adjust and determine all rights of the parties, and is the only redress to which the plaintiffs, if they prove their allegations, are entitled. There is, therefore, no ground upon which the bill can be maintained."

But counsel for complainant insist that equity has jurisdiction herein, because of the trustee relation, which respondents, as administrators of estate of said Brown, sustain to complainants, who are creditors of said estate; that is, that any creditor of an estate is such a cestui que trust (using substantially the language of counsel) as to have a right (if the citizenship be proper) to go into a federal court with a bill in equity to have this estate, as to his claim, administered. The authorities cited by counsel do not appear to sustain so broad a statement of the proposition. He cites Bank v. Jolly's Adm'r, 18 How. 503; Green's Adm'r v. Creighton, 23 How. 106; Payne v. Hook, 7 Wall. 425; Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. Rep. 440.

In Bank v. Jolly's Adm'r, supra, the actual controversy was as to whether a state law, limiting to the courts of the state the remedies in matters of decedents' estates, could be applied to the federal courts, so as to prevent citizens of other states from litigating as to such matters in the federal courts. The bill was dismissed

below. The supreme court, holding such state remedies did not apply in the United States courts so as to prevent citizens of other states from litigating such matters therein, sustain the jurisdiction of the federal courts. A judgment had been obtained in the United States court, and execution thereon returned nulla bona. The bill averred assets in the hands of the administrators of greater amount than the judgment, and that said administrator was about to pay same to Jolly's heirs without paying plaintiff's said judgment. Thus this action was to prevent the funds alleged to be available to the judgment from being dispersed, and then for accounting and distribution so as to include payment of plaintiff's judgment; in other words, maladministration was an ingredient of the bill. But plaintiff had theretofore submitted his claim to a suit at law, and established it therein as a claim or judgment.

Payne v. Hook, supra, also presents peculiar elements of equity jurisdiction. In his statement of the case Justice Davis states:

"This bill charged gross misconduct on the part of the administrator,—that he made false settlements with the court of probate, withheld a true inventory of the property in his hands, used the money of the estate for his private gain, and obtained from complainant by fraudulent representations a receipt in full of her share of the estate, on a payment less than she was entitled to receive. The object of the bill is to obtain relief against the fraudulent proceedings, and to compel a true accounting of administration, in order that the real condition of the estate can be ascertained and the complainant paid what justly belongs to her."

If this statement does not contain sufficient to give undoubted equity jurisdiction to the case, the task would be difficult to invent a case which would confer it.

Lawrence v. Nelson, supra, did not present the point now under consideration. Nelson had established in the United States circuit court in the state of Arkansas a claim against the estate whose administrator Lawrence was, and obtained an order for its payment by Lawrence out of the funds of the estate. The domiciliary administration was in the state of Illinois. In fact, no administration had been taken in Arkansas; the administrator, as such, entering his appearance in the Arkansas action. The administrator filed a petition for rehearing, which was overruled. Within a year thereafter he filed in said Arkansas court a bill of review and for reversal of the decree ordering payment, etc. This was dismissed by the court for want of equity. Subsequently the administrator settled the estate in the Illinois probate court, without paying plaintiff's said established claim. The present bill charged the administrator with having falsely and fraudulently represented to said probate court that all claims and debts against said estate were fully paid, and that the estate had been distributed among the lawful heirs, and finally settled, and Lawrence discharged as administrator, etc. The bill called for an accounting, etc., and, if assets were all paid off, that the administrator be adjudged guilty of devastavit, and decreed to pay the claim,—a clear case of maladministration charged.

The bill in Green's Adm'x v. Creighton, 23 How. 90, charges devastavit upon the administrator of an estate on whose bond Kendall's in-

testate was surety; that the proper probate court, on an accounting by such administrator, found such administrator indebted to the estate over $60,000, ordered it paid over, and that suit be brought on his bond. The bill further shows that said administrator and his said surety were dead, and the other sureties on the bond insolvent, but that said Kendall, as administratrix of said surety's estate, has assets in her hands for administration, and seeks discovery of assets, accounting, and payment. The opinion concludes:

"The remaining question to be considered is whether the debt described in the bill entitles the plaintiff to come into a court of equity under the circumstances. It is well settled that no one can proceed against the sureties on an administration bond at law who has not recovered a judgment against the administrator. But this rule is not founded upon the supposition that there is no breach of the bond until a judgment is actually obtained. The duty of the administrator arises to pay the debts when their existence is discovered, and the bond is forfeited when that duty is disregarded. The jurisdiction of a court of equity to enforce the bond arises from its jurisdiction over administrators, its disposition to prevent multiplicity of suits, and its power to adapt its decrees to the substantial justice of the case. In this case the original debtor has died insolvent. His surety has died insolvent. A portion of the assets belonging to the estate of the latter is in the hands of the surety of this administrator. A discovery of the nature and amount of the assets in hand, and their application to the payment of the debt, are required if they are subject to the application."

It thus appears that of the cases cited to sustain the bill on this point not one is on all fours with it, and, indeed, we find in each of them that the principles therein laid down do not sustain complainants' contention as to the present bill having standing in equity. The latest expression of the views of the supreme court of the United States is found in Railroad Co. v. Gomila, 132 U. S. 478, 10 Sup. Ct. Rep. 155, and it is believed such expression is in complete harmony with former decisions. In that case the railroad company had recovered judgment in the United States circuit court for the eastern district of Louisiana. After real and personal estate had been advertised for sale under execution issued on said judgment, and before sale, one of the judgment debtors died. A new sale was advertised, such debtor's representatives having been made parties to the proceedings under the execution. Before the day of the sale arrived, the public administrator moved the United States court for an order directing the marshal to withdraw advertisement of sale, and to desist from making sale, etc., on the ground that the advertised assets should be administered with decedent's other assets in the probate court of that state, and also for delivery to him (public administrator) of said property for such administration. The motion was sustained by the court below. On appeal the supreme court are brought to a direct consideration of certain features of the courts of the United States with reference to decedents' estates. The court declare:

"We do not question the general doctrine laid down in Yonley v. Lavender, 21 Wall. 276, to the effect that the administration laws of a state are not merely rules of practice for the courts, but laws limiting the rights of parties, and will be observed by the federal courts in enforcement of individual rights, and that those laws upon the death of a party withdraw the estate of

the deceased from the operation of the execution laws of the state, and place them in the hands of his executor or administrator for the benefit of his creditors and distributees. But that doctrine only applies where the property has not been, previous to the death of the debtor, taken into custody by the federal court upon its process, and thus specifically appropriated to the satisfaction of such judgment. In this case, had Gomila died before the property in question had been seized upon process issued upon a judgment against him, the doctrine of the case cited might have been applicable. We do not recall any case now where the federal courts have not paid respect to the principle that all debts to be paid out of the decedent's estate are to be established in the court to which the law of his domicile has confided the general administration of estates; and that judgments against the deceased, unaccompanied by a seizure of property for their satisfaction, stand in the same position as other claims against his estate, and are to be paid in like manner. The jurisdiction of chancery to enforce the equitable rights of a nonresident creditor in the case of maladministration or nonadministration of the estate of a decedent, stands upon a different principle, (Payne v. Hook, 7 Wall. 425;) the rule prevailing, as stated in Hyde v. Stone, 20 How. 170, that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the state which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power."

In the case at bar the shewing is that Brown's estate is solvent, and no averment is made of fraud or maladministration or nonadministration or the like by the respondents as administrators thereof. Having arrived at the conclusion that the complainants have, with respect to the matters at issue in this case, a "plain, adequate, and complete remedy at law," it follows that the insistence of respondents upon their right to submit these matters to the verdict of a jury cannot be denied, and therefore this action in equity cannot be sustained. The decree of dismissal will follow the precedent in Buzard v. Houston, supra. The bill herein will be dismissed for want of jurisdiction, and at complainants' costs, but without prejudice to another action, at law.