CITY COUNCIL OF AUGUSTA v. TIMMERMAN, County Auditor, et al.

(District Court, W. D. South Carolina. October 20, 1915.)

TAXATION ☞608—SALE OF LAND FOR NONPAYMENT OF TAX—INJUNCTION— POWERS OF FEDERAL COURT.

> Civ. Code S. C. 1912, § 460, provides that "the collection of taxes shall not be stayed or prevented by any injunction"; and section 461 provides that any property owner who deems a tax charged against his property unjust or illegal may pay the same under protest and bring an action within 30 days for its recovery, and that the money shall be deposited in the state treasury to await the determination of the suit, and shall be refunded if the tax shall be adjudged invalid. *Held* that, while such provisions are not binding on a federal court, they afford an owner of property claimed to be exempt from taxation under the statutes of the state an adequate remedy at law against the enforcement of a tax thereon, and that such court will not enjoin its collection.

> [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230-1241; Dec. Dig. ☞608.]

---

In Equity. Suit by the City Council of Augusta against J. R. Timmerman, Auditor, J. F. Mims, Treasurer, and W. R. Swearingen, Sheriff, of Edgefield County, S. C. On rule for temporary restraining order. Denied.

C. Henry Cohen, of Augusta, Ga., and Hendersons, of Aiken, S. C., for complainant.

B. E. Nicholson, of Edgefield, S. C., and Fred. H. Dominick, Asst. Atty. Gen., S. C., for defendants.

JOHNSON, District Judge. This matter comes before me on return to a rule served upon the defendants to show cause why a restraining order pendente lite should not be issued. The complainant is now, and for more than 40 years has been, the owner of and in the possession of about three acres of land in Edgefield county, in this state. This land was acquired and has been used solely for the purpose of the abutment to a dam, which the complainant has erected according to law across the Savannah river, a navigable stream running between the states of South Carolina and Georgia, and during all these years the dam in question has been used by the complainant, a municipal corporation, for the gathering together of the waters of Savannah river and the passage of the same into canals constructed on the Georgia side to operate pumps, supplying the municipal waterworks, the fire supply, the health supply, and the drinking supply of water for the city of Augusta, in the state of Georgia. The said dam as erected was and is being used for said municipal water supply, and said dam is an essential part of the waterworks system of the city of Augusta. The water that is used and pumped by the city, as well as the power to pump, is produced by the said canal, which is a part of the dam, and the dam is a part of the canal; and the canal, dam and abutment on the South Carolina side, and the land heretofore referred to, are all part and parcel of the waterworks of the city of Augusta, a municipal corporation of the state of Georgia.

Complainant has never paid any taxes upon its aforesaid water plant, either in the state of Georgia or in the state of South Carolina. On the 29th day of April, 1915, the defendant J. T. Mims, as treasurer of Edgefield county, issued an execution against the complainant in this action and its property, and placed the same in the hands of the defendant W. R. Swearingen, sheriff of Edgefield county; the execution being for $747.35, the sum of $674.25 thereof being for taxes for the fiscal year 1914 and the balance thereof being costs and penalties accrued thereon. The $674.25 as taxes arises from the assessment made by the auditor of Edgefield county, J. R. Timmerman, one of the defendants herein. The sheriff has served his execution upon the tract of land containing three (3) acres in the county of Edgefield, state of South Carolina, and so much of the dam as extends from the South Carolina shore to the middle of the river. The complainant also alleges that it is informed that the auditor of Edgefield county has levied an assessment for the year 1915, and that, if the said tax is not paid, the said auditor intends to endeavor to collect the same by seizure, levy, and sale of the property in ques-

tion; and complainant further alleges that it is the intention of the authorities, as aforesaid, to enforce, levy, and collect back taxes.

Complainant alleges that under section 290 of the Code of Laws of South Carolina of 1912, volume 1, all assessments, taxes, and penalties, when regularly assessed, are made a specific first lien on the property taxed, and that according to section 474 of said Code of Laws, in all cases of sales for taxes, the sheriff's deed of conveyance shall be held and taken as prima facie evidence of good title, and that all proceedings have been regular, and that all requirements of law have been complied with. The complainant alleges that any sale that may be made or that may be attempted to be made hereafter for the collection of back taxes will prove a cloud upon the title of this land and dam in question, and that the commission of any other assessment on the property of complainant, or any sale made thereof, or any proceedings for the collection of back taxes, would necessarily involve complainant in various suits, and hence a multiplicity of actions and proceedings would arise. Complainant alleges that, if the assessments, sales, and proceedings were permitted to go on, complainant would suffer irreparable damage and injury, because the title to this property would be questioned, and, if the property was sold, damage beyond question would result to the citizens of the city of Augusta in the state of Georgia.

The complainant declares that by subdivision 13 of section 294 of the Code of Laws of South Carolina (1912) there is provided an exemption from taxation as follows:

"All waterworks to supply water for the use of a town or city, the machinery and fixtures connected therewith, and the grounds occupied thereby, when owned by any city or town"

—and that complainant is informed and believes, and so charges, that the express provision of the statute law of South Carolina, as well as the common law and equity on the subject of the exemption of municipal bodies from taxation, when applied to the facts in this case, exempts complainant in this action from any taxes, state or county, upon the property hereinabove described.

The defendants made return, and claimed that this court is without jurisdiction of the matters involved in this action for the reasons: (a) In that the amount involved in this action is less than the sum of $3,000; (b) that under the statute laws of the state of South Carolina the complainant has a full and adequate remedy for the matters complained of in the bill in this action, if entitled to any relief therefrom. The return further shows that the only assessments against the property of the complainant in Edgefield county, known as the "city of Augusta dam property," for which James T. Mims, as treasurer of Edgefield county, has issued execution, and which W. R. Swearingen, as sheriff of Edgefield county, is endeavoring to collect, are the state and county taxes for the fiscal year 1914, amounting to $674.25, together with the costs and penalties accrued thereon, making in the aggregate $747.35; that there is assessed against the complainant, on account of its said property, state and county taxes for the year 1915, amounting to $718.30, but the same are not due and

payable until October 15, 1915, and no effort has been made or could be made by these defendants, or any of them, to collect the same until it becomes due; and that, with reference to the back taxes which complainant alleges defendants will endeavor to collect, under and by virtue of the statute law of the state of South Carolina the state may bring suit for back taxes, but that these defendants are not authorized by law to bring such action, and that no such action has been instituted by them, or any of them.

It will be observed that the return questions the jurisdiction of this court on account of the amount involved in this controversy. In my view of the case, it is not necessary at this time to determine that question. Nor is it necessary to construe subdivision 13 of section 294 of the Code of Laws of South Carolina, nor sections 1 and 4 of article 10 of the Constitution of South Carolina. The Code of Laws of South Carolina, volume 1, section 460, provides:

"The collection of taxes shall not be stayed or prevented by any injunction, writ or order issued by any court or judge thereon."

Section 461 of said Code provides:

"In all cases in which any county, state, or other taxes are now or shall be hereafter charged upon the books of any county treasurer of the state against any person, and such treasurer shall claim the payment of the taxes so charged, or shall take any step or proceeding to collect the same, the person against whom such taxes are charged, or against whom such steps or proceedings shall be taken, shall, if he conceives the same to be unjust or illegal for any cause, pay the said taxes notwithstanding, under protest, in such funds and moneys as the said county treasurer shall be authorized to receive by the act of the General Assembly levying the same; and upon such payment being made, the said county treasurer shall pay the taxes so collected into the state treasury, giving notice at the time to the comptroller general that the payment was made under protest; and the person so paying said taxes may at any time within thirty days after making such payment, but not afterwards, bring an action against the said county treasurer for the recovery thereof in the court of common pleas for the county in which such taxes are payable; and if it be determined in said action that such taxes were wrongfully or illegally collected, for any reason going to the merits, then the court before whom the case is tried shall certify of record that the same were wrongfully collected and ought to be refunded, and thereupon the comptroller general shall issue his warrant for the refunding of the taxes so paid, which shall be paid in preference to other claims against the treasury."

The taxing power is an important attribute of the sovereign powers of the state. It is upon taxation that the state must rely to obtain means to carry on its government, and it is important that its adopted mode to enforce its taxes should be interfered with as little as possible. In South Carolina the Legislature has specifically prohibited its own courts from staying the hands of the fiscal authorities in the collection of taxes. While that statute is not binding upon this court, in its equity jurisdiction, this court will respect it, if it can do so without denying to the complainant any legal or equitable right.

Justice Field, in Dows v. City of Chicago, 11 Wall. (78 U. S.) 110, 20 L. Ed. 65, in commenting on collection of taxes by the states, says:

"No court of equity will * * * allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of

the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of the complainant, before the aid of a court of equity can be invoked. In the cases where equity has interfered, in the absence of these circumstances, it will be found, upon examination, that the question of jurisdiction was not raised, or was waived."

Several decisions of state courts to same effect are quoted. Justice Field, continuing, says:

"The equitable powers of the court can only be invoked by the presentation of a case of equitable cognizance. There can be no such case, at least in the federal courts, where there is a plain and adequate remedy at law. And except where the special circumstances which we have mentioned exist, the party of whom an illegal tax is collected has ordinarily ample remedy, either by action against the officer making the collection or the body to whom the tax is paid. Here such remedy existed. If the tax was illegal, the plaintiff protesting against its enforcement might have had his action, after it was paid, against the officer or the city to recover back the money, or he might have prosecuted either for his damages. No irreparable injury would have followed to him from its collection. Nor would he have been compelled to resort to a multiplicity of suits to determine his rights. His entire claim might have been embraced in a single action."

Justice Moody, in the case of Boise Artesian Water Co. v. Boise City, 213 U. S. at page 281, 29 Sup. Ct. at page 427, 53 L. Ed. 796, says:

"The sum of the company's contentions is that the imposition of the license fee was illegal, unconstitutional, and void. All these contentions are open in a court of law. It is a guiding rule in equity that in such a case it will not interpose where there is a plain, adequate, and complete remedy at law. This rule at an early date was crystallized into statute form by the sixteenth section of the Judiciary Act (Revised Statutes, § 723 [Comp. St. 1913, § 1244]), which, if it has no other effect, emphasizes the rule and presses it upon the attention of courts. New York, &c., Co. v. Memphis Water Co., 107 U. S. 205, 214 [2 Sup. Ct. 279, 27 L. Ed. 484]. It is so well settled and has so often been acted upon that no authority need be cited in its support, though it must not be forgotten that the legal remedy must be as complete, practicable, and efficient as that which equity could afford. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 11 [19 Sup. Ct. 77, 43 L. Ed. 341]. A notable application of the rule in the courts of the United States has been to cases where a demand has been made to enjoin the collection of taxes or other impositions made by state authority, upon the ground that they are illegal or unconstitutional. The decisions of the state courts in cases of this kind are in conflict, and we need not examine them. It is a mere matter of choice of convenient remedy for a state to permit its courts to enjoin the collection of a state tax, because it is illegal or unconstitutional. Very different considerations arise where courts of a different, though paramount, sovereignty interpose in the same manner and for the same reasons. An examination of the decisions of this court shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused it to refrain from so doing in all cases where the federal rights of the persons could otherwise be preserved unimpaired. It has been held uniformly that the illegality or unconstitutionality of a state or municipal tax or imposition is not of itself a ground for equitable relief in the courts of the United States. In such a case the aggrieved party is left to his remedy at law, when that remedy is as complete, practicable, and efficient as the remedy in equity. And the rule applies as well where the right asserted is by way of defense. Insurance Co. v. Bailey, 80 U. S. [13 Wall.] 616, 623 [20 L. Ed. 501]. In order to give equity jurisdiction there must be shown, in

addition to the illegality or unconstitutionality of the tax or imposition, other circumstances bringing the case under some recognized head of equity jurisdiction, before the remedy by injunction can be awarded. The leading case on the subject is Dows v. Chicago, 78 U. S. [11 Wall.] 108 [20 L. Ed. 65]."

Justice Holmes, in Dalton Machine Co. v. Virginia, 236 U. S. at page 701, 35 Sup. Ct. at page 480, 59 L. Ed. 797, refers to the Boise Artesian Water Co. v. Boise City Case as authority, and concludes his decree in these words:

"The appellant has an adequate remedy at law in its right to raise the constitutional question if proceedings are taken against it, or, it seems, to recover the money if it pays under protest. No special circumstances are shown, that we can notice, to take this case out of the ordinary rule. Indiana Mfg. Co. v. Koehne, 188 U. S. 681, 690 [23 Sup. Ct. 452, 47 L. Ed. 651]."

The doctrine announced in these cases is sustained by the great weight of authority. It is true that this court can reach out its strong arm and stay the fiscal authorities of South Carolina in the performance of their duty, giving as a reason that taxes are a lien on the property and a cloud upon its title; but there is no equity here that appeals to the conscience of the court with impelling force. "An examination of the decisions of the Supreme Court shows that a proper reluctance to interfere by prevention with the fiscal operations of the state government has caused it to refrain from so doing in all cases where the federal rights of the persons could otherwise be preserved unimpaired." In this case the complainant is setting up no right under the Constitution or statutes or treaties of the federal government. Its sole contention is that the state of South Carolina has by subdivision 13 of section 294 of the Civil Code of 1912 exempted its property from taxation. What could be more appropriate than to allow the courts of South Carolina to construe their own statutes with respect to taxation? The complainant can pay its taxes under protest and then bring suit against the county treasurer of Edgefield county to recover it. If the court holds that subdivision 13 of section 294 exempts the property of the complainant from taxation, it would be so certified, and the money would be refunded. There is no multiplicity of suits involved, because, if the courts of South Carolina held, in an action under section 461, that the property of the complainant is exempt from taxation, there would be no further attempt to collect taxes thereon. There would be no cloud upon the title of complainant, and no impairment of any of its legal rights. The complainant, claiming a legal right, has a full, complete, adequate, practicable, and efficient remedy at law.

For these reasons the temporary restraining order is refused.