# BUZARD *v.* HOUSTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF TEXAS.

Argued November 2, 1886. — Decided December 13, 1886.

A court of equity of the United States will not sustain a bill in equity, in a case of fraud, to obtain only a decree for the payment of money by way of damages, when the like amount might be recovered in an action at law.
A bill in equity alleged that the defendant, after agreeing in writing to sell

to the plaintiff a certain number of cattle at a specified price, induced him to surrender the agreement, and to receive instead thereof an assignment from the defendant of a similar contract of a third person with him, and also to pay the defendant a sum of money, and to give an obligation to pay him another sum, by false and fraudulent representations as to the solvency of that person; and prayed for a cancellation of the aforesaid assignment and obligation, for a reinstatement and confirmation of the original agreements, and its enforcement on such terms as the court might direct, or else for a repayment of the sum paid, and for damages, and for further relief. *Held*, that the bill showed no case for relief in equity, because an action of deceit would afford a full, adequate, and complete remedy.

If a bill in equity, showing ground for legal and not for equitable relief, prays for a discovery, as incidental only to the relief sought, and the answer discloses nothing, but the plaintiff supports the claim by independent evidence, the bill must be dismissed, without prejudice to an action at law.

This was a bill in equity, filed November 23, 1881, by Buzard and Hillard, citizens of Missouri, against Houston, a citizen of Texas, the material allegations of which were as follows:

That the plaintiffs were partners in the business of pasturing and breeding cattle upon a tract of land owned by them in the State of Texas, and on October 14, 1881, negotiated a purchase from the defendants of fifteen hundred cows and fifty bulls, to be delivered at Lampasas in that State in May, 1882, at the price of fifteen dollars and a half a head, one half payable upon the signing of the contract, and the other half upon delivery of the cattle; that the terms of their agreement were stated in a memorandum of that date, signed by the parties, and intended as the basis of a more formal contract to be afterwards executed; and that the plaintiffs at once paid to the defendant $500 in part performance.

That on October 31, 1881, the parties resumed negotiations, and met to complete the contract; that the defendant then proposed that, in lieu of the contract with him for the cattle mentioned in the memorandum, the plaintiffs should take from him an assignment of a similar contract in writing, dated August 13, 1881, and set forth in the bill, by which one Mosty agreed to deliver to the defendant an equal number of similar

cattle, at the same time and place, at the price of fourteen dollars a head.

That the defendant then stated that he had paid the sum of $15,000 on the contract with Mosty; and asked that, in case of his assigning that contract to the plaintiffs, they should pay him that sum, and also the difference of a dollar and a half a head in the prices mentioned in the two contracts, but finally proposed to deduct from this twenty-five cents a head.

That, as an inducement to the plaintiffs to make the exchange of contracts, the defendant represented to them that Mosty was good and solvent, and able to perform his contract; that he was better than the defendant, and then had on his ranch twelve hundred head of the cattle; and that there was no doubt of the performance of this contract, because one McAnulty was a partner with Mosty in its performance — of all which the plaintiffs knew nothing, except that they knew that McAnulty was a man of wealth, and fully able as well as willing to perform his contracts.

That on November 1, 1881, the plaintiffs, believing and relying on the defendant's representations aforesaid, accepted his proposition, and paid the sum of $14,500, making, with the sum of $500 already paid, the amount of $15,000, which he alleged he had paid to Mosty on his contract; and executed and delivered to the defendant their obligation to pay him, on the performance by Mosty of that contract, an additional sum of $1837.50, being the profit on the contract with Mosty in the sale to the plaintiffs, less the deduction of twenty-five cents a head; and returned to him his original contract with them, and in lieu thereof received from him his contract with Mosty and his assignment thereof to the plaintiffs, endorsed thereon, and set out in the bill, containing a provision that he should not be responsible in case of any failure of performance by Mosty.

That the aforesaid representations of the defendant were absolutely untrue, deceitful and fraudulent, and were known by the defendant to be false, and the plaintiffs did not know and had no means of knowing that they were untrue; that those representations were intended by the defendant to de-

ceive the plaintiffs, and did deceive them to their great injury, to wit, to the extent of the amount of $15,000 paid by them to him, and to the further extent of $10,000, for the expenses necessary to obtain other cattle, and for the loss of the increase of such cattle for the next year by reason of the impossibility of obtaining them in the exhausted condition of the market; and that Mosty at the time of the assignment was absolutely insolvent and had no property subject to be taken by his creditors, and his contract was utterly worthless, as the defendant then knew.

The bill then stated that the plaintiffs brought into court the contract between the defendant and Mosty, that it might be delivered up to the defendant; and also the assignment thereof by the defendant to the plaintiffs, that it might be cancelled.

The bill prayed for a discovery; for a rescission and cancellation of the assignment of the contract with Mosty, and also of the plaintiffs' obligation to pay to the defendant the sum of $1837.50; for the repayment to the plaintiffs of the excess of money received by the defendant from them beyond the amount which they were to pay him under the original contract; for a reinstatement and confirmation of that contract, and its enforcement upon such terms as the court might deem just and proper; or, if that could not be done, that the defendant be compelled to restore to the plaintiffs the sums of $500 and $14,500 received from them, and also to pay them the sum of $10,000 for damages which they had sustained by reason of the defendant's fraudulently obtaining the surrender of the original contract, and by reason of the other injuries resulting to them therefrom; and for further relief.

The defendant demurred to the bill, assigning as a cause of demurrer that the bill showed that the plaintiffs' only cause of action, if any, was for the sums of money paid by them on the contract, and for damages for breach of the contract, for which they had an adequate and complete remedy at law. The Circuit Court overruled the demurrer.

The defendant then answered fully under oath, denying that he made any of the representations alleged, and repeat-

ing the defence taken by demurrer; the plaintiffs filed a general replication; conflicting testimony was taken; at a hearing upon pleadings and proofs, the bill was dismissed with costs; and the plaintiffs appealed to this court.

*Mr. H. E. Barnard* for appellants.

*Mr. James F. Miller*, for appellee, submitted on his brief.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

In the Judiciary Act of 1789, by which the first Congress established the judicial courts of the United States and defined their jurisdiction, it is enacted that "suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law." Act of September 24, 1789, c. 20, § 16, 1 Stat. 82; Rev. Stat. § 723. Five days later, on September 29, 1789, the same Congress proposed to the legislatures of the several States the Article afterwards ratified as the Seventh Amendment of the Constitution, which declares that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." 1 Stat. 21, 98.

The effect of the provision of the Judiciary Act, as often stated by this court, is that "whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury." *Hipp* v. *Babin*, 19 How. 271, 278; *Insurance Co.* v. *Bailey*, 13 Wall. 616, 621; *Grand Chute* v. *Winegar*, 15 Wall. 373, 375; *Lewis* v. *Cocks*, 23 Wall. 466, 470; *Root* v. *Railway Co.*, 105 U. S. 189, 212; *Killian* v. *Ebbinghaus*, 110 U. S. 568, 573. In a very recent case the court said: " This enactment certainly means something; and if only declaratory of what was always the law, it must, at

least, have been intended to emphasize the rule, and to impress it upon the attention of the courts." *New York Guaranty Co.* v. *Memphis Water Co.*, 107 U. S. 205, 214.

Accordingly, a suit in equity to enforce a legal right can be brought only when the court can give more complete and effectual relief, in kind or in degree, on the equity side than on the common law side; as, for instance, by compelling a specific performance, or the removal of a cloud on the title to real estate; or preventing an injury for which damages are not recoverable at law, as in *Watson* v. *Sutherland*, 5 Wall. 74; or where an agreement procured by fraud is of a continuing nature, and its rescission will prevent a multiplicity of suits, as in *Boyce* v. *Grundy*, 3 Pet. 210, 215, and in *Jones* v. *Bolles*, 9 Wall. 364, 369.

In cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action sounding in tort or for money had and received. *Parkersburg* v. *Brown*, 106 U. S. 487, 500; *Ambler* v. *Choteau*, 107 U. S. 586; *Litchfield* v. *Ballou*, 114 U. S. 190.

In England, indeed, the court of chancery, in cases of fraud, has sometimes maintained bills in equity to recover the same damages which might be recovered in an action for money had and received. But the reason for this, as clearly brought out by Lords Justices Knight Bruce and Turner in *Slim* v. *Croucher*, 1 D., F. & J. 518, 527, 528, was that such cases were within the ancient and original jurisdiction in chancery, before any court of law had acquired jurisdiction of them, and that the assumption of jurisdiction by the courts of law, by gradually extending their powers, did not displace the earlier jurisdiction of the court of chancery. Upon any other ground, such bills could not be maintained. *Clifford* v. *Brooke*, 13 Ves. 131; *Thompson* v. *Barclay*, 9 Law Journal (Ch.) 215, 218. And we have not been referred to any instance in which an English court of equity has maintained a bill in such a case as that now before us. In *Newham*

v. *May*, 13 Price, 749, Chief Baron Alexander said : "It is not in every case of fraud that relief is to be administered by a court of equity. In the case, for instance, of a fraudulent warranty on the sale of a horse, or any fraud upon the sale of a chattel, no one, I apprehend, ever thought of filing a bill in equity."

The present bill states a case for which an action of deceit could be maintained at law, and would afford full, adequate, and complete remedy. The original agreement for the sale of a number of cattle, and not of any cattle in particular, does not belong to the class of contracts of which equity would decree specific performance. If the plaintiffs should be ordered to be reinstated in all their rights under that agreement, and permitted now to tender performance thereof on their part, the only relief which they could have in this suit would be a decree for damages to be assessed by the same rules as in an action at law. The similar contract with Mosty and the assignment thereof to the plaintiffs are in the plaintiffs' own possession, and no judicial rescission of the assignment is needed. If the exchange of the contracts was procured by the fraud alleged, it would be no more binding upon the plaintiffs at law than in equity ; and in an action of deceit the plaintiffs might treat the assignment of the contract with Mosty as void, and, upon delivering up that contract to the defendant, recover full damages for the non-performance of the original agreement. No relief is sought against Mosty, and he is not made a party to the bill. The obligation executed by the plaintiffs to the defendant is not negotiable, so that there is no need of an injunction. A judgment for pecuniary damages would adjust and determine all the rights of the parties, and is the only redress to which the plaintiffs, if they prove their allegations, are entitled. There is therefore no ground upon which the bill can be maintained. *Insurance Co.* v. *Bailey*, 13 Wall. 616, and other cases above cited.

The comparative weight due to conflicting testimony such as was introduced in this case can be much better determined by seeing and hearing the witnesses than upon written depositions or a printed record.

This case does not require us to enter upon a consideration of the question, under what circumstances a bill showing no ground for equitable relief, and praying for discovery as incidental only to the relief sought, is open to a demurrer to the whole bill, or may, if discovery is obtained, be retained for the purposes of granting full relief, within the rule often stated in the books, but as to the proper limits of which the authorities are conflicting. It is enough to say that the case clearly falls within the statement of Chief Justice Marshall: "But this rule cannot be abused by being employed as a mere pretext for bringing causes, proper for a court of law, into a court of equity. If the answer of the defendant discloses nothing, and the plaintiff supports his claim by evidence in his own possession, unaided by the confessions of the defendant, the established rules, limiting the jurisdiction of courts, require that he should be dismissed from the court of chancery, and permitted to assert his rights in a court of law." *Russell* v. *Clarke*, 7 Cranch, 69, 89. See also *Horsburg* v. *Baker*, 1 Pet. 232, 236; *Brown* v. *Swann*, 10 Pet. 497, 503.

The decree of the Circuit Court, dismissing the bill generally, might be considered a bar to an action at law, and it is therefore, in accordance with the precedents in *Rogers* v. *Durant*, 106 U. S. 644, and the cases there cited,

> *Ordered that the decree be reversed, and the cause remanded with directions to enter a decree dismissing the bill for want of jurisdiction, and without prejudice to an action at law.*

MR. JUSTICE BRADLEY dissenting.

I dissent from the judgment in this case so far as it directs the bill to be dismissed by the court below for want of equitable jurisdiction. The complainant had been induced to give up a contract for cattle made to him by the defendant, and to accept in lieu of it an assignment from the defendant of a contract which he had from a third person who was insolvent, and whose insolvency was not known by the complainant, but was known by the defendant, though he asserted that the third person was entirely responsible. The bill seeks to abro-

gate and set aside the assignment and to restore to com- plainant, his original contract, on account of the fraud and misrepresentation practised upon him. Having been induced to pay $15,000 in the transaction, and suffered a large amount of damages, he adds to the relief sought a prayer to have his damages assessed and decreed. This is the case made by the bill. I think it is clearly within the scope of equity jurisdic- tion, both on account of the fraud, and from the nature of the relief asked by the complainant, namely, the cancellation of an agreement, and the reinstatement of a contract which he had been fraudulently induced to cancel. If the bill had prayed nothing else, it seems to me clear that it would have presented a case for equity. A court of law could not give adequate relief. The existence of the assignment and the can- cellation of the first agreement would embarrass the plaintiff in an action at law. It is different from the case of a lost note or bond. Fraud is charged, and documents exist which in equity ought not to exist. I think the complainant is enti- tled to have the fraudulent transaction wiped out, and to be restored to his original status.