### NIAGARA FIRE INS. CO. OF NEW YORK et al. v. ADAMS et al.

(Circuit Court of Appeals, First Circuit. September 10, 1912.)

#### No. 958.

COURTS (§ 335*)—STATE PRACTICE—JURISDICTION—ADEQUATE REMEDY AT LAW —SUIT FOR CANCELLATION OF INSURANCE POLICY.

A federal court of equity will not follow a practice of the courts of the state in which it sits, by entertaining a suit for the cancellation of an insurance policy for fraud of the insured, where the facts alleged would not only constitute a complete defense to an action at law on the policy, but would support an action at law for deceit. Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501, and Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451, applied.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 902–907½; Dec. Dig. § 335.*

Conformity of practice in common-law actions, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by the Niagara Fire Insurance Company of New York and another against Alma H. Adams and others. Decree for defendants, and complainants appeal. Affirmed.

The following are the opinions of Dodge, District Judge, in the lower court.

#### On Demurrer to Bill.

According to this bill the complainant Niagara Fire Insurance Company issued two policies of fire insurance to the defendant Adams, covering the personal property in the building 47 Juniper street, Boston, and the complainant Glens Falls Fire Insurance Company issued to her one policy covering the same property. The Niagara Company's policies, Nos. 92,407, for $2,000, and 100,779, for $4,000, were issued November 21, 1908, and November 22, 1910, respectively; the first-mentioned policy being made payable to the defendant McGinnis, mortgagee, as interest may appear. The Glens Falls Company's policy No. 60,476, for $1,000, was issued April 23, 1910. Proofs of an

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

alleged loss under the policies have been presented, whereof the defendants are claiming payment from the complainant companies. The complainants ask the court to declare these policies void for fraud and to enjoin the defendants from suing or enforcing them.

The allegations of fraud are that the two defendants, having been closely associated for years, and being without financial resources, fraudulently agreed and conspired to obtain the policies described, upon articles of little or no value, for the purpose of causing the property to be destroyed by fire and of fraudulently obtaining from the plaintiffs payment of the policies above mentioned; that in pursuance of this plan the defendant McGinnis falsely represented to the Niagara Company, on or about November 20, 1908, that she held a mortgage on Adams' personal property to the amount of $3,000, and requested the issuance of its policy No. 92,407 for $2,000, in Adams' name, payable to her as mortgagee as interest may appear, then well knowing that she had no mortgage upon any property of Adams, and that the Niagara Company, believing this statement, issued the policy, upon property worth not more than $1,000; that also in pursuance of the same plan the same defendant falsely and knowingly represented to the same company, on or about November 20, 1910, that she had sold $4,000 worth of personal property to Adams, and requested the issuance of its policy No. 100,779 to Adams in order to obtain said insurance on property of little value, and that the Niagara Company, believing said statement, issued said policy accordingly; that the defendant Adams represented to the Glens Falls Company, at some time not specified, that she owned a large amount of valuable property on which there was no other insurance, knowing at the time that she held the policy No. 92,407 above mentioned, and that neither defendant at any time disclosed to either company that the other company had issued policies on the property; and that the defendant Adams in pursuance of said plan set a fire, or caused it to be set, at 47 Juniper street, on December 15, 1910, for the purpose of destroying all the insured property and obtaining payment of a total loss under the policies, but that only part of the property was destroyed by fire, and part of the remainder was damaged by fire, smoke, and water. It is further alleged that Adams never executed any mortgage to McGinnis, but had bound herself by written agreement to pay McGinnis $7,000, with interest at 6 per cent., in weekly payments of $10 each, for a large number of perishable articles specified in the proofs of loss afterward presented, wherein the price of each article was fixed far in excess of its value, in order to show that the value of the insured property intended to be destroyed by fire would equal or exceed the total amount insured under all the policies.

The Niagara Company may have believed the alleged false statements to be true when it issued its policies 92,407 and 100,779, but there is no distinct allegation that it was induced to issue them by its belief in the truth of those false statements. Whether the defendant McGinnis held a mortgage on the property or not, or to what amount, would not appear to have been material when the policies were issued. In case of loss under the policies, she would in any event have had to prove her interest in order to recover. Nor would the value of the property appear to have been material when the policies were issued. To recover after a loss, the insured would have to prove the value of what was lost. As to the policy issued by the Glens Falls Company, the bill does not even allege that the statements claimed to have been false were believed to be true by the insurer when it issued the policy, and the statement that there was no other insurance on the property does not appear to have been material, in view of the usual provisions regarding other insurance which all the policies contain. But, assuming it to be shown that the insured took out all the policies in pursuance of a previous plan to cheat the insurers by causing a fraudulent loss, there can be no question that this would show all the policies to have been void when issued, like any contract into which one party enters for the purpose of cheating the other by means of it. Dow v. Sanborn, 3 Allen (Mass.) 181; Haigh v. Delacour, 3 Camp. 319.

Proof of such a fraud, however, would be a complete defense to an action at law on either policy, and although a federal court of equity may in a proper case order the surrender and cancellation of a policy of insurance void

for fraud in obtaining it, yet it will not generally do so, after a loss is claimed, when the fraud can be perfectly well established as a defense at law in a suit on the policy. Special circumstances must be shown, threatening irreparable injury to the insurer, if he is denied a preventive remedy. That he has no choice of the time of the commencement of the action at law, or less control of its conduct than the insured, are not circumstances sufficient for the purpose. All this appears to be now settled by the decision of the Supreme Court in Cable v. Insurance Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188 (1903). See, also, Riggs v. Insurance Co., 129 Fed. 207, 63 C. C. A. 365; Insurance Co. v. Griesa (C. C.) 156 Fed. 398; Griesa v. Insurance Co., 169 Fed. 509, 513, 94 C. C. A. 635, in the Court of Appeals for the Eighth Circuit, following Cable v. Insurance Co.

The bill alleges that the defendant McGinnis may sue the Niagara Company at law on its policy 92,407, that the defendant Adams may also sue it at law on its policy 100,779, that Adams may also make it defendant with McGinnis in an equity suit to establish the respective interests of the two defendants under its policy 92.407, and that Adams may also sue the Glens Falls Company on its policy 60,476. This prospect of a multiplicity of suits is relied on to establish the complainants' right to equitable relief.

It is obvious that part of the apprehended multiplicity is because of the fact that two separate insurers have joined in this bill as complainants; but no connection between them, and no dependence of either on the other, in the issuing of their respective policies, is alleged, and the dates of the policies, as stated, are widely separated. Nor is it alleged that the amount for which either insurer may be held depends on the amount of liability of the other, as in Virginia-Carolina, etc., Co. v. Home, etc., Co., 113 Fed. 1, 51 C. C. A. 21. Except that the policies cover the same property. the frauds alleged upon the respective insurers were distinct and independent. The Glens Falls Company which has issued one policy only on the property can hardly claim rights in equity, which it would not have if it stood alone, because the Niagara Company issued two policies on the same property, one some 18 months earlier and one some 6 months later than its own policy. The two insurers in combination have no more of a cause of action in equity than either would have independently. Insurance Co. v. Mohlman Co. (C. C.) 73 Fed. 66; Insurance Co. v. Hoover, etc., Co., 173 Fed. 888, 891, 97 C. C. A. 400, 32 L. R. A. (N. S.) 940.

If the Niagara Company issued two policies on the property, one two years later than the other, the first payable to the alleged mortgagee, as interest may appear, it may be subject to more than one suit; but it can hardly be said to be subject to more than one on the same contract. Litigation between the two insured under one of the contracts can hardly be said to increase the number of possible suits which the insurer may have to defend. That it may have to defend suits on each of the two policies referred to I am unable to regard as establishing a sufficient probability of irreparable injury to it. Insurance Co. v. Pearson (C. C.) 114 Fed. 395, decided in this court in 1902, is the authority most relied on by the complainants; but the apprehended multiplicity of suits there treated by the court as a circumstance sufficient, with other circumstances, to establish jurisdiction in equity, consisted in a possibility of many successive suits arising out of the same policy. I find no authority for holding that when the insurer has issued two policies on widely separated dates, though to the same insured and on the same. property, the. prospect of a suit against him on each policy is enough to entitle him to bring the insured into a court of equity.

None of the other facts alleged in the bill seem to me sufficient to warrant its maintenance, if it cannot be maintained upon the alleged grounds already discussed. The demurrer is therefore sustained. The temporary injunction in force may, if the complainants request it, be continued in force long enough to afford them an opportunity to appeal.

## On Demurrer to Amended Bill.

Since the demurrer to the original bill was sustained (see opinion above), the plaintiffs have, with the defendants' consent, been allowed to amend the bill as set forth in their motion filed December 4, 1911.

The amendment has cured some of the defects found to exist in the original bill. It is now averred that the plaintiff Glens Falls Company believed the alleged false statements; also that both the plaintiff companies relied upon said statements and were thereby induced to issue their policies.

The amendment also sets forth the "other insurance" clause found in each policy. Copies of the policies are annexed to the original bill, and this quotation is not, strictly speaking, an amendment. The amendment goes on to aver that by reason of the clause quoted the amount of liability of either insurer depends upon the amount of liability of the other. The clause is in common use in similar policies, and does not, to my mind, bring about the result averred. Recovery under either policy is not made dependent on the amount recovered under the others, but upon the amount insured by them.

The remainder of the amendment changes the wording of the twenty-first paragraph of the bill, but does not seem to me to add anything material. The reasons against taking jurisdiction in equity of the controversy set forth, with the result of depriving the defendants of their right to resort to a court of law, seem to me no less strong than before.

The present demurrer is therefore sustained.

Arthur J. Selfridge, of Boston, Mass., for appellants.

Thomas M. Vinson, of Boston, Mass., for appellee Adams.

W. Kittredge, of Boston, Mass. (Kittredge & Dana, on the brief), for appellee McGinnis.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. To state this case in a short way, but sufficient for our purposes in view of our references to the opinions of the learned judge of the Circuit Court, this is a bill filed by two fire insurance companies, which issued three fire policies, two by the Niagara Company and one by the Glens Falls Company, to the two respondents, who are each asserting certain interests in the property to which the policies relate. The bill alleges frauds in obtaining the policies which, if proved, would be a full defense to them at either law or equity. It also alleges that a portion of the property was destroyed by fire during the currency of the policies, but that only a portion of the property was so destroyed. It also alleges that the respondents hold the policies, and refuse to surrender the same, and pretend to have a claim thereon for possible future loss, "so that, if the remainder of said property should be destroyed by fire, they would have an additional claim under said policies."

The two policies issued by the Niagara Company expired after the decree in the Circuit Court, and after the appeal to this court was perfected. Therefore as to them the appeal becomes a moot appeal, and necessarily fails.

The bill was amended to cover a certain lack of specific allegations, and demurred to in its amended form. The demurrer was sustained, and a decree entered for the respondents, whereupon the complainants appealed to us. No question of pleading now remains, and the case is before us on the merits.

The bill, in addition to the charge of fraud, alleges that there are certain questions of contribution between the two companies, and certain other questions of adjustment, which threaten a com-

plication and multiplicity of litigation, enough to furnish a basis for this bill in equity. There is, however, nothing here beyond the ordinary questions of contribution, which always occur, in the main, as between concurrent underwriters; and as to this proposition we accept the reasoning and conclusion of the Circuit Court.

Also, as to the principal relief sought for by the bill, which is for cancellation of the policies by reason of the alleged fraud in obtaining them, we observe that the topic has been fully discussed by the learned judge of the Circuit Court in two opinions passed down by him; and we are satisfied with the reasoning of the opinions and the conclusions reached therein. We adopt the same, with some additions thereto, as follows:

The conclusions of the Circuit Court on this branch of the case depend on the general proposition that the complainants have full remedy at law; so that, within the authorities cited by the court, among which is Cable v. Ins. Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188 (1903), the bill cannot be maintained, inasmuch as none of the exceptional reasons for maintaining it appears. However, the complainants maintain that, in accordance with the decision of the Supreme Judicial Court of Massachusetts, constituting the district in which these occurrences arose and this litigation was carried on, state courts in equity would have full jurisdiction on the facts shown here, for which see Commercial Ins. Co. v. Mc-Loon, 14 Allen (Mass.) 351, the Circuit Court should have accepted the jurisdiction as claimed by the complainants, even though, independently of the local practice, it could not have been required to do so. Of course, the complainants understand that, in matters of equity, the statutes of the United States do not require the federal courts to follow the rules of practice prevailing in the state courts, as they require this in common-law proceedings. Nevertheless the complainants rely on the fact that in some cases, by certain analogies, the federal courts do accept special rules of the locality of the district within which the litigation is pending, giving rights and privileges in equity beyond those usually recognized by the courts of the United States. This, however, never has gone so far as now asked for by the complainants. Perhaps Cowley v. Northern P. R. Co. (1895) 159 U. S. 569, 582, 583, 16 Sup. Ct. 127, 131 (40 L. Ed. 263) states this exceptional rule as well as it can be stated anywhere, in the following language:

"Although the statute of a state or territory may not restrict or limit the equitable jurisdiction of the federal courts, and may not directly enlarge such jurisdiction, it may establish new rights or privileges which the federal courts may enforce on their equity or admiralty side, precisely as they may enforce a new right of action given by statute upon their common-law side."

Of course, all the decisions in this direction limit this to matters which are of an equitable nature, while in the case at bar there is at the outset no state statute establishing a new right or privilege. We are asked to follow in equity a practice of the state courts not based on any particular legislation, but on general rules of law. If we should admit that proposition here, it would fol-

low that we must in every case in equity follow the practice of the local tribunals. This, of course, no one would undertake to maintain. But this is not all.

It cannot be questioned that in England at the time to which the rules of the Supreme Court in equity refer us, and according to the practice which prevailed in the United States prior to the later decisions of the Supreme Court, and aside from the statute to which they refer, there was a general equity power to set aside instruments obtained by fraud, whether there was a full defense at law or not, and whether or not the case had so far ripened that the parties against whom a bill in equity was brought had a right of action which might be immediately enforced. This was an old rule, as ancient as the period in England when the courts of common law had only limited powers with reference to defenses based on fraud. That equitable right having once originated was never lost, and was early recognized by various Chancellors in the United States, and by the text-writers. For example, Story's Equity Jurisprudence, the first edition of which was published before the decision in Ins. Co. v. Bailey, hereinafter referred to, affirmed the general right to compel delivery up and cancellation of agreements, securities, deeds or other instruments obtained by fraud, without any limitation. This was a wholesome doctrine, and was free from the uncertainties and embarrassments connected with the new rule of the federal courts, as fully manifested in Ins. Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501, decided at the December term, 1871, and Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451 (1886). These decisions were based on the Judiciary Act of 1789. While ordinarily the Supreme Court has not applied that act to cut down the ancient equitable jurisdiction, it has clearly done so with reference to the particular topic concerned here. The extent to which this line of decisions reaches is shown in Buzard v. Houston. There the rule of Ins. Co. v. Bailey is fully developed and explained; and this line of decisions necessarily reaches the case at bar, and every aspect of it, notwithstanding there may be a remnant of one of the policies, the Glens Falls policy, which has not yet ripened, so far as an existing right of action is concerned.

We thus refer to Buzard v. Houston, first as demonstrating the application of the limitation of the exceptional practice relied on by the complainants, to the effect that in some cases the federal courts may adopt in equity the peculiar rules of the state courts. Ins. Co. v. Bailey and Buzard v. Houston show that the rules as to cancellation of instruments governing the federal courts grow out of a statute of the United States, which, of course, controls the federal courts, whatever may be the local practice, or even local statutes. Therefore, for this special reason, no federal court would be justified in adopting the local procedure under the circumstances arising here.

We also refer to Buzard v. Houston for the second reason, that it establishes the proposition that the learned judge of the Circuit Court was right in holding that there are no peculiar circumstances

here which take this case out of the general rules with reference to the cancellation of instruments. In Buzard v. Houston certain untruthful representations were involved which were shown to be false; and yet the court set up the statute of 1789 as a full defense to a proceeding in equity, because it said, at page 253, that "the present bill states a case for which an action of deceit could be maintained at law, and would afford full, adequate, and complete remedy." In the present case, if the complainants should bring an action of deceit for fraudulent representations, and maintain their suit, they would obtain a judgment which would create a complete estoppel as against any suits on the policies. This is a fundamental proposition, which disposes of the case in any aspect.

The decree of the Circuit Court is affirmed, and the respondents recover their costs of appeal.