## HOWARD v. TEXAS CO.

No. 578.

District Court, N. D. Texas, Wichita Falls Division.

April 4, 1931.

daux lease in Young county, Texas. That at said time the defendant owned other leases in Young county, Texas, in close proximity to this lease, and, for the purpose of pumping the oil wells, maintained power plants with connections to said wells, for the purpose of producing and running the oil therefrom and storing same in the pipe lines and storage tanks to which said pipe lines were connected, and in the course of such operations the defendant had more than three employees at all of such times. That because of these facts, the said defendant was entitled· to become a subscriber under the terms and within the purview of the Workmen's Compensation Law of the State of Texas, and was entitled to carry a policy of Workmen's Compensation Insurance in compliance with the terms and provisions of said law; said policy to be issued by one authorized to carry such insurance, but the said defendant failed to secure from one authorized to carry such insurance, an insurance policy and failed to protect the plaintiff with insurance under the provisions of said Workmen's Compensation Act. That in lieu of securing a policy of insurance from one authorized to carry insurance upon the defendant's employees, the defendant undertook to carry its own insurance by means of an arrangement through the Security Union Insurance Company of Houston, Texas, but in truth and in fact the risk was not that of the Security Union Insurance Company, but was the risk of this defendant, and the defendant merely paid the Security Union Insurance Company a brokerage or commission in order to use the name of said Security Union as an insurance carrier, and in order that the Security Union Insurance Company would issue a policy in favor of the defendant on its employees, which policy was to be used by the defendant as a subterfuge and for the evasion of that provision of the Workmen's Compensation Act of the State of Texas, which prohibits an employer from carrying insurance on his own men under the terms and provisions of said Act; there being an understanding and agreement between the defendant and the Security Union Insurance Company that the risk would be not that of the Security Union Insurance Company, but would be that of the defendant herein. This arrangement as to insurance between the defendant and the Security Union Insurance Company was unknown to the plaintiff and he had nothing to do with such method so employed by the defendant, and had nothing to do with the defendant's failure to provide insurance for the plaintiff's protec-

H. S. Garrett, of Fort Worth, Tex., for the motion.

Harry Weeks, of Wichita Falls, Tex., opposed.

ATWELL, District Judge.

Howard, a citizen of Texas, alleges that he was an employee of the Texas Company, a Delaware corporation, and that, while so employed, he was injured and sues for damages in the sum of $100,000. He claims that:

"On or about October 30th, 1928, the plaintiff, A. A. Howard, was one of the employees of the defendant in the course of such business operations, the plaintiff being employed as a pumper on the Nellie Prie-

tion under the terms of the Workmen's Compensation Act."

■ Under section 3 of the Employers' Liability Law of Texas, as amended by the Thirty-Fifth (Acts 35th Leg. 1917, c. 103) and Thirty-Eighth (Acts 38th Leg. 1923, c. 177, § B) Legislatures, an employee of a subscriber has no right of action against his employer for damages for injuries received at his work. Griffith v. Associated Employers' Reciprocal (Tex. Civ. App.) 10 S.W.(2d) 129; Gordon v. Ins. Co. (Tex. Civ. App.) 287 S. W. 911.

At the very outset the plaintiff must strike down the policy of insurance which he claims the defendant carried with the Security Union Insurance Company. The battle must be waged at equity. He charges that the defendant's pretense of having such insurance was a "subterfuge for the evasion of the compensation act," which forbids an employer from carrying its own insurance. He also claims that he "had no knowledge of the defendant's failure to comply with the act."

The defendant declines to waive its right to have the equity determined by a chancellor. Great American v. Johnson (C. C. A.) 25 F.(2d) 847.

■ The making of rules for the easy transfer of causes from the law to the equity docket, and from the equity docket to the law docket, and the willingness of the courts to speed litigation in a practical and sensible manner, must not be taken as an obliteration of the two systems in the national courts. The Constitution provides that "the judicial power shall extend to all cases of law and equity. * * *" Const. art. 3, § 2. The acts of Congress likewise maintain the distinction between common law and equity jurisdiction. Law machinery may be largely state made, but equity is obtained according to the rules made by the Supreme Court of the United States, section 913, R. S. U. S. (28 USCA § 723).

■ Equity rules 22, 23, 26, and 18 (28 USCA § 723), together with 274a and 274b, Judicial Code (28 USCA §§ 397, 398), have no force to destroy this difference. They do not justify the joinder by the plaintiff of matters cognizable in equity and at law. Bucyrus Co. v. McArthur (D. C.) 219 F. 266; Morris v. Texas Working Barrel Mfg. Co. (C. C. A.) 13 F.(2d) 977; Denison v. Keck (C. C. A.) 13 F.(2d) 384. Lawsuits must be where they may have a trial by jury, and actions in equity must be where an appeal may be made to the conscience of the chancellor. Lindsay v. First Nat. Bank of Shreveport, 156 U. S. 485, 15 S. Ct. 472, 39 L. Ed. 505; Buzard v. Houston, 119 U. S. 347, 7 S. Ct. 249, 30 L. Ed. 451; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Hurt v. Hollingsworth, 100 U. S. 100, 25 L. Ed. 569; Cherokee Nation v. Southern Kansas Ry. Co., 135 U. S. 641, 10 S. Ct. 965, 34 L. Ed. 295; Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218; Cates v. Allen, 149 U. S. 451, 13 S. Ct. 883, 977, 37 L. Ed. 804; Bennett v. Butterworth, 11 How. 669, 13 L. Ed. 859.

These two methods for the administration of justice in the national courts are fundamental. They are grained in the very fabric of the foundation. Utility must be sacrificed, if necessary, for their preservation.

The late cases of Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, and Twist v. Prairie Oil & Gas Co., 274 U. S. 689, 47 S. Ct. 755, 71 L. Ed. 1297, caution and inspirit us in this thought. When there are so many assaults being made upon established institutions, it is well for the bench and bar to preserve such distinctions and such fundamental outlines as have been productive of a splendid jurisprudence and an orderly administration.

The practical side appears in a case such as Lyons v. Goffe (C. C. A.) 46 F.(2d) 241, 244, where it is ruled that under 274a, Judicial Code, 28 USCA § 397, if upon the presentment of an application for equitable interposition an "adequate remedy at law" is apparent, the cause will not be dismissed but will go to the law docket.

■ The plaintiff, having interwoven into his cause of action an equity without which he would have no suit against the defendant, must litigate on that side of the docket as to that, and the motion to transfer is sustained.