## BROWN PAPER MILL CO., Inc., v. FRAZIER.

### No. 7420.

Circuit Court of Appeals, Fifth Circuit.

March 15, 1935.

Alden T. Shotwell, of Monroe, La., for appellant.

Dhu Thompson, of Monroe, La., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

James H. Frazier sued the Brown Paper Mill Company in equity because of its refusal to take and pay for certain pulpwood and obtained a money decree from which each side appeals, Frazier on the ground that he did not get enough, the Mill Company on the ground that no recovery should have been had.

Frazier could not have in equity any right to recover the price of the pulpwood or his expense in cutting it unless he had some contract valid in law which was breached, and money damages is the only remedy sought or obtained. It would seem that resort to equity was improper. Buzard v. Houston, 119 U. S. 347, 7 S. Ct. 249, 30 L. Ed. 451. But neither the defendant nor the chancellor objected, and the decree is not invalid on appeal. Southern Pacific R. R. Co. v. United States, 200 U. S. 341, 26 S. Ct. 296, 50 L. Ed. 507.

The Mill Company used from four to five hundred cords of pulpwood per day, partly cut from its own lands and partly bought from others at a customary price of $4 per cord f. o. b. cars. Frazier was a country merchant whose customers cut wood for which he paid them at the same rate, he advancing them money and provisions and crediting the wood to their accounts, and in turn selling it to the Mill Company. This had been done for several years before 1930, the Mill Company being well aware of Frazier's operations and taking all his wood, with occasional delays when its yard became crowded; but there was no express contract to do so. In 1930 the mill put in other machinery which should have used more wood, and a drought drove many farmers to cutting wood for a living. The new machinery did not work well, and the business depression slowed the mill operations down, so that in June the Mill Company wrote Frazier not to ship any more wood before September 1st. Frazier replied that he had old wood on hand that would depreciate if held, and represented the need of work for his customers to live, and asked to ship the old wood at once and to begin regular shipments August 1st. In reply, on June 23d, the Mill Company wrote if he had old wood it was not its fault, but if it could take the wood before September 1st he would be advised; "any wood cut from now on will be perfectly all right to ship after Sept. 1st, which will let you use your labor through the summer and you can resume shipping after Sept. 1st." During August Frazier continued to cut and without avail to ask permission to ship. On September 2d he wrote: "Our situation is acute, to say the least. Woodmaking is all that our farmers can find to do for sustenance for their families, as they have no crops or credits. We have been financing them for their timber and the making and hauling, and we cannot go with them much further without relief by shipments. * * * We have now more than 1500 cords with advances on for the making and some for the hauling to the railroad." The Mill Company wrote in reply: "We note that you say you have some 1500 cords already cut, and it is our opinion that it would be best for you not to cut any more at the present time or until we can see better as to just how far we will be able to let you ship your wood. It looks like it will be some two or three weeks before we can lift the embargo." Frazier testifies that he went to the mill about September 10th and told the timber agent that he had a little more than 1,500 cords at that time, and the agent replied that he had got his letter and answered it. Frazier then said he had cut maybe three or four or five hundred cords in the last week, and the agent cautioned him against cutting too much wood and said there should be no new woodmaking, not to start up new woodmaking. On November 8th the Mill Company authorized shipment of two cars per week, but added: "While we expect to take your wood as we can, we cannot guarantee to take any certain amount within any given time. The best we can do is to take your wood as we can use it, and any cutting you do will be on your own responsibility." Frazier then ceased cutting. He was allowed to deliver only 722 cords, by which time his wood became unusable and was lost except for a little salvage which he realized by selling it for other purposes. The decree was that the Mill Company was bound to take 1,500 cords and the loss on the remaining 778 cords was adjudged against it.

The decree was right. There was no mutually binding contract that Frazier should cut wood for the Mill Company. The Mill Company could not have sued him if he had refused to cut any. There was an encouragement to cut held out by the Mill Company both by its previous practice and especially by its letter of June 23 which might be construed into an offer to buy what should be cut. This offer could be ripened into a contract of sale by tendering a specific amount of wood before the offer was withdrawn. The letter of September 2d above quoted, with the reply to it, may be taken under all the circumstances as showing a sufficient meeting of minds that 1,500 cords should be delivered in a reasonable time afterwards to be paid for at the customary price of $4 per cord. Any excess above 1,500 cords is too vaguely alluded to to compel either its delivery or its acceptance. The expressions of the Mill Company in that letter so far discourage further cutting as to destroy the implication of a continuance of the offer to buy. So that although Frazier cut more afterwards and tendered it, it must be held to have been cut at his own risk and to have never become the subject of any binding contract. We affirm the conclusion that 1,500 cords and no more were validly contracted for. All the wood that was thereafter accepted was properly credited against this contract.

Objection is made to the allowance of interest because not prayed for. A paragraph of the petition asserts that Frazier is entitled to judgment on the contract "with a legal rate of interest on his invested capital." The prayer is "for all needful orders and decrees in the premises and for full general and equitable relief." The decree for interest is well warranted by the pleadings.

Judgment affirmed.