## UNITED STATES SHIPPING BOARD MERCHANT FLEET CORPORATION, to the Use of the UNITED STATES, v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 6352.

United States Court of Appeals for the District of Columbia.

Argued March 4, 1935.

Decided March 25, 1935.

Ralph H. Hallett, Asst. Counsel, Solicitor's Office, Department of Commerce, and Leslie C. Garnett, U. S. Atty., both of Washington, D. C., for appellant.

Edwin C. Brandenburg, Louis M. Denit, and Challen B. Ellis, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant, whom we shall call Fleet Corporation, brought an action at law in 1930 against appellee, whom we shall call surety, on the same cause of action asserted here. That action was dismissed in December, 1931, and the pending action begun. The issues were made up, and the case calendared for trial June 13, 1933, but, for some reason which does not appear, the trial was postponed. On February 12, 1934, counsel for Fleet Corporation filed a motion for the transfer of the action from the law side to the equity side of the court. The stated grounds and reasons of the motion are, first, "the bond on which the cause is based does not express the true intent of the parties as a result of a mutual mistake and must be reformed to express that intent; second, the amount to be arrived at as due under the penalty of the bond cannot be determined solely by a statement and settlement of the accounts kept by the France & Canada Steamship Corporation, the operating agent and principal on said bond, but the accounts kept by the United States Shipping Board Merchant Fleet Corpora-

tion pertaining to the same operation and as trustee for the United States of America will also have to be stated and settled and the United States Shipping Board Merchant Fleet Corporation is, therefore, a proper party defendant; and, third, the settlement of the accounts, involving nearly 566 separate items, covering a period of approximately two years, is of such a technical and voluminous nature that it would be beyond the ability of a jury to adequately and completely determine the case, whereas a court of equity can give that adequate and complete remedy to which the parties are entitled."

Accompanying the motion is a supporting affidavit of counsel, from which it appears that the first ground of the motion, the ground of a mistake in the bond, is to provide the opportunity of reforming the bond to cover *sundry* agreements, the bond as written providing indemnity for the breach of *an* agreement; as to the second ground, that a rearrangement of the parties is necessary, on the theory that, as the United States is the real party in interest and is entitled to the recovery, it should properly be named as plaintiff; as to the third ground, the affidavit is an amplification of the statement that the nature and extent of the accounts and evidence necessary to prove the mutual debits and credits are so intricate, long, and involved as to make it impossible for a jury properly to comprehend the issue. The motion was fully argued to the court below and denied, and we granted a special appeal October 12, 1934.

In order to make more apparent the precise question before us, it is necessary to make a short statement of facts. The action is brought by the Fleet Corporation against the surety on a bond to recover for loss claimed to have been suffered as a result of the failure of France & Canada Steamship Corporation, principal on the bond, to properly account for and turn over to the Fleet Corporation sums of money amounting in all to $227,193.01. Between 1919 and 1921 the Fleet Corporation employed the steamship company as its agent to manage and operate certain vessels for the transportation of freight. The terms of employment were set forth in a formal contract, by which the agent was required to give bond for the faithful discharge of its duties and obligations. The bond was executed on December 30, 1919, and the form of contract was revised and modified and

enlarged from time to time, the surety assenting and agreeing that the bond should not be affected thereby, but should continue in full force and effect respecting the new agreements. The bond provides indemnity against pecuniary loss by reason of defaults by the agent under the contracts. Altogether twenty-nine vessels were assigned to the agent for operation and management, and all operations were completed on or prior to June 11, 1921. The declaration alleges that the steamship company did not faithfully perform and account and, as a result, a loss was sustained; that in 1922 the steamship company was adjudicated bankrupt, and the United States received payment of 12 per cent. of its proved claim under a composition made with the bankrupt; and that, crediting that amount on the loss, there was due the Fleet Corporation, for the use of the United States, $199,473.71, with interest, etc.

The motion was filed pursuant to section 274a of the Judicial Code (28 USCA § 397), which provides: "In case any United States court shall find that a suit at law should have been brought in equity or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. * * *"

Bearing in mind the two grounds of the motion—for we may dismiss the second ground with the bare statement that it is wholly without merit, and, indeed, as we think, without point—it may be conceded that, if the first ground properly states a case for the reformation of the language of the bond, the action should be transferred to the equity side of the court, for admittedly a court of law cannot accomplish the same result. It is also true that, as to the third ground, equity has jurisdiction to settle mutual accounts between the parties. But the jurisdiction does not exist because the accounts are difficult or complicated. There must be such complexity as makes it clearly appear that the case presents a problem too difficult for a jury to unravel. The right to trial by jury may not be taken away if there is a practical and efficient remedy at law. Phoenix Mut. Life Insurance Company v. Bailey, 13 Wall. 616, 621, 20 L.

Ed. 501; Buzard v. Houston, 119 U. S. 347, 7 S. Ct. 249, 30 L. Ed. 451.

Applying these principles to the facts here, we find, first, that the grounds for reformation are that the Fleet Corporation, at the time the bond was taken, entered into a contract with the steamship company for the management and operation of certain of its steamers and that it used a Fleet Corporation form of contract known as "M–2," covering the management agreement, and another form, "O–2," covering the operating agreement. The two forms are in many respects identical and, taken together, form a managing-operating agreement thoroughly familiar to the shipping world. Indeed, the so-called "operating agreement" (form O–2) seems to us substantially to embrace everything included in the managing agreement (form M–2). But, without regard to this, an inspection of the bond shows beyond any question that, irrespective of the form of the agreement, it was intended, as between the parties, to cover the whole contract, and we think it does.

■ On its face it declares that the agreement with the steamship company, performance of which the bond is to secure, is for the *operating and managing* of certain vessels heretofore or hereafter assigned to the steamship company as *managers and operators*. The two form agreements (M–2 and O–2) precisely fit this description, and would be no more aptly designated if the letter "s" were added to the word "agreement" to make it read "agreements," as the motion seeks to have done. The descriptive language used is itself inclusive. The subsequent agreements, under which additional vessels were assigned, were regularly recognized in writing by the surety as covered by the bond, and those agreements are likewise recognized by the surety as retroactive to March 1, 1920, which was an earlier date than the date of settlement for any of the vessels allocated under any of the forms. But, more than this, the surety is not defending on the ground that the bond covers only a part of the accounts, but, both in argument and in brief, recognizes that it covers the entire agreement involving the entire 29 vessel accounts. And so we agree fully with the statement in its brief that, "under these circumstances, there is no basis whatever for seeking to reform the bond." With this question disposed of, nothing more remains than to determine whether there is in the motion, or in the proposed bill filed with it, enough to convince us that there is such complexity in the plaintiff's case as to render it impracticable for a jury to state the account between the parties clearly and fairly.

■ The agreement between the Fleet Corporation and the steamship company provided that the latter should act as agent of the former for the purpose of collecting the freight moneys arising out of the operation of the vessels, and in advancing the operating expenses and other reasonable expenses customarily paid by vessel owners. The declaration alleges that the steamship company have misapplied, and dishonestly and fraudulently misappropriated to their own use, sums of money belonging to the Fleet Corporation, contrary to the terms of the agreement, and a schedule is filed with the declaration showing as to each ship and each voyage, by date and by item, the amounts claimed to be due. While the total number of items exceeds 500, and therefore would justify reference to an auditor as provided by sections 254–256 of the District of Columbia Code 1901 (D. C. Code 1929, T. 24, §§ 52–54), no reason is shown why there should be any serious difficulty or long delay in stating the account correctly. To take and report testimony; to audit and state accounts; to make computations; to determine, where the facts are complicated and the evidence voluminous, what questions are actually in issue; to hear conflicting evidence and make findings thereon—these are the purposes for which auditors have been appointed. Kimberly v. Arms, 129 U. S. 512, 523, 9 S. Ct. 355, 32 L. Ed. 764; In re Peterson, 253 U. S. 300, 313, 40 S. Ct. 543, 64 L. Ed. 919. If the case is transferred to the equity side of the court, it would be just as necessary that it should be referred to the auditor or to a special master, and the exceptions and objections to the auditor's or master's findings can be just as readily disposed of in a court of law as in a court of equity. In re *Peterson, supra.* Reference of complicated questions of fact to an auditor to hear the evidence and make findings has long been recognized as an appropriate proceeding in an action at law. Hecker v. Fowler, 2 Wall. 123, 17 L. Ed. 759.

We can find nothing in any of the pleadings which we think would justify a different conclusion than the one reached below, and so we dismiss the appeal.

Appeal dismissed.