**In re Christopher PILAVIS, Debtor.**

**Richard A. Campana, Plaintiff,**

**v.**

**Christopher Pilavis and Troula Pilavis, Defendants.**

**Bankruptcy No. 98–13074–WCH.**

**Adversary No. 98–1995.**

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Jan. 21, 1999.

Evan James Pilavis, Malden, MA, for the debtor.

Frederic D. Grant, John T. Morrier, Grant & Roddy, Boston, MA, for Richard A. Campana.

## MEMORANDUM OF DECISION ON DEFENDANT TROULA PILAVIS' REQUEST FOR A JURY TRIAL

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. *Introduction*

Richard Campana ("Campana") originally brought this action in state court against the debtor, Christopher Pilavis (the "Debtor"), and his wife, Troula Pilavis ("Mrs. Pilavis"), to avoid alleged fraudulent transfers of real property. Mrs. Pilavis filed a demand for a jury trial both in the state court and here, and Campana filed a motion to strike her demand.[1] I hold that, as a party to a fraudulent conveyance action which seeks the avoidance of real property transfers, Mrs. Pilavis is not entitled to a jury trial under the Seventh Amendment of the United States Constitution.

### II. *Analysis*

In *Granfinanciera, S.A. v. Nordberg,* the trustee in bankruptcy sued to recover an alleged fraudulent transfer of $1.7 million from the defendant, who demanded a jury trial. *See* 492 U.S. 33, 36–37, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The United States Supreme Court held that because the Seventh Amendment guarantees the right to a jury trial "in suits at common law," the right only applies to actions of the kind which would have been decided in law courts rather than equity courts in eighteenth-century England before the merger of those courts. *See id.* at 41–42, 109 S.Ct. 2782. It employed a three-part test to determine whether an action gives rise to a Seventh Amendment right to a jury trial:

---

1. In her state court Answer, Mrs. Pilavis properly claimed her right to a jury trial under Mass. R.Civ.P. 38. Campana removed the case to this Court on July 1, 1998. M.L.B.R. 9015–1 requires the filing of "a separate pleading entitled 'Demand for Jury Trial' no later than ten (10) days after the filing of the answer" and provides that the failure to so file "constitutes a waiver of the right to trial by jury." Although Mrs. Pilavis did not file the present jury trial request until December 23, 1998, almost six months after the removal of the case, it is questionable whether M.L.B.R. 9015–1 has any application in a case such as this where the relevant state law procedures were complied with prior to the removal. Notwithstanding any possible procedural deficiencies, I will reach the merits of Mrs. Pilavis' jury trial request.

First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the court of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.... The second stage of this analysis is more important than the first.... If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether [the party may nevertheless be denied a jury trial under the 'public rights' doctrine].

*Id.* at 42, 109 S.Ct. 2782.

With respect to the first part of the test, the Supreme Court found that there was "no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th–century England." *Id.* at 43, 109 S.Ct. 2782. As for the second part of the test, the Court held that the nature of the relief sought (i.e. "money payments of ascertained and definite amounts") was legal rather than equitable. Finally, addressing the third part of the test, the Court stated that, "[a]lthough the issue admits of some debate, a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.* at 55, 109 S.Ct. 2782. Thus, the Supreme Court, reversing the Court of Appeals for the Eleventh Circuit, held that the defendant had a Seventh Amendment right to a jury trial. *See id.* at 38, 109 S.Ct. 2782.

Subsequent to the Supreme Court's decision in *Granfinanciera,* the Third Circuit decided *Resolution Trust Corporation v. Pasquariello (In re Pasquariello),* 16 F.3d 525 (3rd Cir.1994), which highlights the distinctions between the present case and *Gran-*

*financiera.* In *Pasquariello,* the trustee in bankruptcy and the Resolution Trust Corporation sued to avoid an alleged fraudulent transfer of real property from the debtor to his wife. *See id.* at 527. The debtor's wife demanded a jury trial. *See id.* The Third Circuit found *Granfinanciera* distinguishable because it involved a fraudulent transfer of a "determinate sum of money" rather than real property. *See id.* at 530. Because actions brought to remedy fraudulent transfers of real property were commonly brought in courts of equity in eighteenth-century England, the Third Circuit held that there was no Seventh Amendment right to a jury trial. *See id.*[2]

This importance of this distinction is supported by the fact that "every court of appeals to have considered the issue, albeit prior to *Granfinanciera,* held that any attempt to remedy a fraudulent conveyance of *real property* through a set aside or avoidance was a matter for the equity courts and that no right to a jury trial attached." *See id.* (emphasis added) (citing *Pettigrew v. Graham (In re Graham),* 747 F.2d 1383, 1387–88 (11th Cir.1984); *Whitlock v. Hause,* 694 F.2d 861, 863–66 (1st Cir.1982); *Duncan v. First Nat'l Bank,* 597 F.2d 51, 55–56 (5th Cir.1979); *Hyde Properties v. McCoy,* 507 F.2d 301, 306 (6th Cir.1974) (dictum); *Senchal v. Carroll,* 394 F.2d 797, 797–99 (10th Cir.), *cert. denied,* 393 U.S. 979, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968); *Damsky v. Zavatt,* 289 F.2d 46, 53–54 (2d Cir.1961); *Johnson v. Gardner,* 179 F.2d 114, 117 (9th Cir.1949), *cert. denied,* 339 U.S. 935, 70 S.Ct. 661, 94 L.Ed. 1353 (1950)).[3]

Applying the first part of the *Granfinanciera* test to the present case, it is clear that in the late eighteenth-century, the English courts of law and equity had concurrent jurisdiction over fraudulent conveyance actions

**2.** Even though the Third Circuit's ultimate decision in *Pasquariello* was merely the denial of a petition for a writ of mandamus and it expressly declined to "intimat[e] any opinion as to the proper outcome on a direct appeal," *id.* at 531, the court's opinion provides a well-reasoned analysis of jury trial rights which I adopt. *See Sullivan v. Clayton (In re Clayton),* 1996 WL 387719 at *2 (Bankr.E.D.Pa.).

**3.** It should be noted, however, that some bankruptcy and district courts, albeit prior to *Pasquariello,* have followed *Granfinanciera* in cases involving fraudulent conveyances of real property. *See, e.g., Luper v. Langley (In re Lee Way Holding Co.),* 115 B.R. 586 (S.D.Ohio 1990), *rev'd on other grounds,* 956 F.2d 1164 (6th Cir.1992); *Roth v. Iacovelli (In re Southeast Connectors, Inc.),* 113 B.R. 85 (S.D.Fla.1990).

concerning real property. *See Granfinanciera*, 492 U.S. at 45, 109 S.Ct. 2782; *Pasquariello*, 16 F.3d at 530. While an action to recover possession of real property, known as ejectment, was an action at law, an action to set aside a fraudulent conveyance of real property was usually heard in equity. *See Pasquariello*, 16 F.3d at 530 (citing *Hobbs v. Hull*, 1 Cox 445, 29 Eng.Rep. 1242 (Ch.1788) (holding suit to set aside conveyance of land by husband to wife may be adjudicated in court of equity); 1 GERRARD GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES § 98 (rev. ed.1940); 3 JOHN N. POMEROY, POMEROY'S EQUITY JURISPRUDENCE § 968 (Spencer W. Symons, ed., 5th ed.1941)).

This conclusion is not in conflict with *Granfinanciera*, which the Supreme Court itself repeatedly characterized as involving an action for a "determinate sum of money." *See, e.g., Granfinanciera*, 492 U.S. at 46–47, 109 S.Ct. 2782. The Court, for example, discussed the case of *Ex Parte Scudamore*, 3 Ves.jun. 85, 30 Eng.Rep. 907 (Ch.1796), which involved the alleged fraudulent transfer of accounts receivable. *See id.* at 45, 109 S.Ct. 2782. The Court observed that "[a]lthough this case demonstrates that fraudulent conveyance actions could be brought in equity, it does not show that suits to recover *a definite sum of money* would be decided by a court of equity when a petitioner did not seek distinctively equitable remedies." *Id.* (emphasis added). And, in distinguishing *Hobbs v. Hull*, the Court explained that that opinion's

> sweeping statement that 'Courts of Equity have most certainly been in the habit of exercising concurrent jurisdiction with the Courts of Law on the statutes of Elizabeth respecting fraudulent conveyances,' *id.* at 445–446, 30 Eng.Rep. at 1242, is not supported by reference to any cases that sought the recovery of *a fixed sum of money* without the need for an accounting or other equitable relief.

*Granfinanciera*, 492 U.S. at 45–46, 109 S.Ct. 2782 (emphasis added).

In citing *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932), which the Court characterized as removing all doubt as to the correctness of its decision, it stated: "There, as here, '[t]he preferences sued for were *money payments of ascertained and definite amounts*' and '[t]he bill discloses no facts that call for an accounting or other equitable relief.'" *Granfinanciera*, 492 U.S. at 48–49, 109 S.Ct. 2782 (emphasis added). And, finally, the Court cited with approval the following passage from 1 GLENN, *supra*, which expressly draws this distinction:

> [I]f the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee to-day as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.

*Granfinanciera*, 492 U.S. at 44, 109 S.Ct. 2782 (quoting GLENN § 98 at 183–84 (footnotes omitted)).

With respect to the second part of the test, the remedy Campana seeks, the avoidance of alleged fraudulent transfers of real property, is equitable in nature. *See Pasquariello*, 16 F.3d at 531. In contrast, the money remedy sought in *Granfinanciera* could "be recovered at law in an action sounding in tort or for money had and received." *Granfinanciera*, 492 U.S. at 47–48, 109 S.Ct. 2782 (quoting *Buzard v. Houston*, 119 U.S. 347, 352, 7 S.Ct. 249, 30 L.Ed. 451 (1886)). That fact, coupled with "the long-settled rule that suits in equity will not be sustained where a complete remedy exists at law," led the Supreme Court to conclude that the remedy sought was legal in nature. *Id.* at 48, 109 S.Ct. 2782. Also, while in *Granfinanciera* there was no request for an "accounting or other specifically equitable form of relief," 492 U.S. at 49, n. 9, 109 S.Ct. 2782, Campana seeks such equitable remedies as a preliminary injunction and an accounting in addition to an avoidance of the alleged fraudulent real property transfers. *See Pasquariello*, 16 F.3d at 531 (because plaintiff sought "a plethora of equitable remedies," a complete remedy was not available at law).

### III. *Conclusion*

Because I find that actions to avoid fraudulent transfers of real property were commonly heard in courts of equity in eighteenth-century England and that the remedies of avoidance, preliminary injunction, and accounting in such a case are equitable in nature. I hold that, under *Granfinanciera*, Mrs. Pilavis does not have a Seventh Amendment right to a jury trial. Because my consideration of the first two parts of the *Granfinanciera* test lead to that conclusion, I need not reach the third part of the test. *See Granfinanciera*, 492 U.S. at 42, 109 S.Ct. 2782. A separate order will enter.